MORRIS JOSELOFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7462, 7513. Promulgated January 29, 1947.

*Harry Silverson, Esq.,* and *John P. Allison, Esq.,* for the petitioner. *Martin M. Lore, Esq.,* for the respondent.

## OPINION.

HARLAN, *Judge*: The respondent justifies the taxation of the income of the two trusts involved herein to the settlor on two propositions:

(1) The settlor retained dominion and control over the trust property and remained in substance the owner thereof, and

(2) The trust is revocable by the settlor's wife, who does not have a substantial adverse interest in the disposition of the corpus or the income thereof.

The respondent's argument in support of his first contention, that the settlor retained dominion over the trust property, is based upon the power of the settlor to direct and control the trustee in investing the income and corpus of the trust, together with the power of the settlor to remove the trustee at any time.

Under the power to control investments the trustor from 1938 to 1941, inclusive, directed and approved the investment by the trustee in Sycamore Corporation "debentures" of very considerably more than half of the trust estate in 1938 and practically two-thirds thereof in 1941. The Sycamore Corporation was a personal family holding company, of which the settlor held substantially 73 per cent of the stock, his wife 18 per cent, and the trusts for the children 9 per cent. It is the Commissioner's argument that these debentures constitute nothing more nor less than receipts from the grantor's *alter ego*, the Sycamore Corporation, for money loaned in effect to the grantor.

Neither the respondent nor the petitioner has presented us with any authority whereby this specific question has been raised. However, as in all similar questions, we must look to the case of *Helvering* v. *Clifford*, 309 U. S. 331. That case will furnish the basis for the consideration of the principle involved, although it is at once recognized that the facts in the case at bar have very little relation to those in the *Clifford* case. In the *Clifford* case the court said:

> The wide powers which he [the settlor] retained included for all practical purposes most of the controls which he as an individual would have. There were, we may assume, exceptions such as his disability to make a gift of the corpus to others during the term of the trust and to make loans to himself. * * * We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment he has rather complete assurance that the trust will not effect any substantial change in his economic position * * * Where the head of a household has income in excess of normal needs it may well make but little difference to him (except income tax-wise) where portions of that income are routed—so long as it stays in the family group. In those circumstances the all important factor might be retention by him of control over the principal.

In the case at bar the petitioner, by failing to appoint himself trustee, has escaped the obligations imposed upon a trustee to operate the trust in the interest of the beneficiary and, since the trustee, by the trust agreement, is excused from all liability for obeying the directions of the settlor in making the so-called "investments," there are certainly no inhibiting influences in the trust agreement or in the conditions surrounding the operation of the trust requiring the trustee to operate this trust in the interest of the beneficiaries. Thus the settlor of this trust, under the guise of retaining to himself the complete power over the investment of the trust funds, has in effect made himself both the lender and the borrower of the corpus of the trust. The distinction between his position after he has thus, through debentures in the Sycamore Corporation, procured for his own use the funds of this

trust estate, and his position if he had retained all of those same funds in his own possession without going through the formality of the holding company and the creation of the trust, is difficult to distinguish. In this case it is true, as the petitioner has shown, all of the petitioner's investments in the Sycamore Corporation debentures have been financially advantageous to the trust, but, if the results were otherwise, the trustee and the beneficiaries would be in no position to protect themselves. Although the length of the term, the character of the trustee, and the surrounding circumstances in this case differ very much from those in the *Clifford* case, the net result, whereby the settlor has retained for himself dominion over the trust estate, the power to use the trust estate for his own economic good, and the inclusion of the income of the trust estate in the economic unit of the family, are common elements of the case at bar and the *Clifford* case.

In *Kohnstamm* v. *Pedrick*, 153 Fed. (2d) 506, the court says that in cases involving the taxability of family trusts to the settlor courts are "to cumulate the elements of retained control and see whether, because of them, the settlor remains in 'substance' the 'owner' of the trust fund."

In the case at bar it is our opinion that the grantor of these trusts, by reserving to himself the power to lend the corpus of the trust to a holding company of which he and his wife are substantial owners, has made himself in substance the owner of this trust fund, and the only result of the creation of the trust has been to divide the income which the corpus of the trust has produced between himself and the trust and thereby, if the respondent's position is not supported, the petitioner has obtained an unwarranted tax advantage.

The second reason which respondent advances as to why the income of this trust should be taxed to the grantor is that the trust is revocable during the life of the grantor and before the beneficiary reaches the age of twenty-five by direction of the grantor's wife. The Commissioner contends that, under the trust instrument and the conditions surrounding it, the grantor's wife has no interest in the preservation of the trust adverse to that of the grantor and that therefore the corpus of the trust may be revested in the grantor, and under the provisions of section 166 of the Internal Revenue Code [1] the income thereof is taxable to him.

It therefore becomes necessary for us to determine precisely what the

---

[1] SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust shall be included in computing the net income of the grantor.

interests of Lillian L. Joseloff, the wife of the grantor, are in the preservation of the trusts. Petitioner enumerates these interests as follows:

1. A legal interest, with pecuniary value, consisting of a contingent remainder in each trust.
2. A non-legal interest, with possible pecuniary value, consisting of (a) her right to receive income distributed to her by the Trustee without any duty to account therefor, (b) to receive principal advances free of supervision by the Trustee, and (c) to exercise her dominant position on the Committee of Control to procure a termination of either or both trusts.

The question of the substantial value of a remote contingent remainder such as exists in this case has frequently been decided, not only by this Court, but in other tribunals. It must be remembered that if neither of these trusts is revoked, Lillian Joseloff, in order to realize on her contingent remainder, would be required to survive both of her daughters and the issue of both of her daughters. In the first taxable year Lillian was 44 years of age, Joan 13, and Carol 11. In a case almost identical with the one at bar, *Claire R. Savage*, 4 T. C. 286, the Court speaks of such a contingent remainder and says:

We fail to see any substantial adverse interest in the respective grantor's spouse * * * which would deter his or her use of the power to amend for the grantor's benefit. * * * The interest of the spouse is that of a contingent remainderman, and it will vest, if at all, only upon the termination of the trust under almost impossible circumstances. * * * In order for her to benefit from either of these trusts she would have to outlive the survivor of the two minor children and their issue, if any. To hold that such a remote possibility of receiving benefit constitutes a "substantial adverse interest" would do violence to the meaning of the word "substantial" and to the intent of Congress * * *.

In *Cushman* v. *Commissioner*, 153 Fed. (2d) 510, the grantor of a trust for the benefit of his two minor children and their living issue, failed to divest himself of the possibility of reversion by operation of law. The court says:

If all the grantor's children were to die without issue and if the last of them failed to exercise a valid appointment by will, the grantor, if living, might inherit some of the trust estate * * * but where the chance that the grantor will ever get anything is so remote as it is here, it certainly cannot be considered an economic benefit closely retained by the grantor.

To the same effect see *Frances Biddle Trust*, 3 T. C. 832; *Estate of Harris Fahnestock*, 4 T. C. 1096.

If it be contended that grantor's wife could at least remove the primary estate of one of her children and her living issue by revoking one of the trusts, her reversionary interest would still be contingent on surviving one minor daughter and the issue of this daughter and it could certainly not be contended that in revoking the trust to accomplish this very doubtful advantage to herself her act would be "adverse" to the interest of the grantor. Petitioner, however, argues

that the grantor's wife has other interests in the preservation of this trust beside her contingent remainder, to wit, her right to receive income from the trustee without any duty to account therefor. The trust instrument, however, provides that all money so received shall be used for the "support, maintenance and education" of the beneficiary. For the wife to obtain any economic benefit from this money it would be necessary for her to misappropriate the funds and violate the terms of the trust. It could hardly be said that it would be to her interest to preserve a trust, the very terms of which prevent her from procuring any benefit from such income.

Petitioner says that the wife also has the right "to receive principal advances free of the supervision by the trustee." Such advances are those advanced from the principal recommended by the advisory committee to the trustee, but it is to be noted that the grantor himself, as long as he is living, has a very definite check on such advances, as the trust provides: "The trustee shall be under no obligation to act without the approval of said Morris Joseloff during his life." Thus the wife, without the consent of the grantor, in spite of the recommendation of the committee, would receive nothing from the trustee from the principal of the trust. Her interest in such funds is certainly not adverse to the grantor, who is in a position to authorize or disapprove such advancements.

Petitioner further says that the wife, through her dominant position in the committee of control, could procure a termination of either or both trusts. This contention is far from clear. The committee has no power to terminate the trusts except by distributing portions of the corpus and, as shown above, this can not be done without the approval of the settlor of the trusts. Furthermore, all of such disbursements must be "for her [the beneficiary's] benefit." Any benefit to Lillian Joseloff would be in the nature of an embezzlement under the terms of the trust.

Offsetting these speculative adverse interests of the wife in the preservation of the trust, it is at once evident that the wife possesses some very substantial interests, from a purely selfish viewpoint, in the revocation of the trusts. The grantor of this trust in 1938 was sixty years of age. If the corpora of these trusts had been revested in her husband in 1941, when he was sixty-three years of age, his estate would have been enriched by $666,201.02. The income of one-third of this, under the laws of Connecticut, would have inured to Mrs. Joseloff for life at the death of her husband. Furthermore, and from a practical viewpoint, if Morris Joseloff really desired the revocation of these trusts at any time, it would be much to Morris Joseloff's advantage to compensate his wife if necessary for any pecuniary interest she might think she would be losing by the revocation of the trusts. Furthermore, this trust is entirely a family affair. Both the settlor and his wife have but

one interest, and that is the interest of the family unit. The fact that Mrs. Joseloff would deposit in these trust estates 2,000 shares of Sycamore Corporation common stock having a value of $61,174.49 and thereby make it possible for that stock, in the case of the revocation of the trust, to vest in her husband, without even requiring any agreement other than a receipt therefor, given not to her, but to Morris, certainly is ample evidence that there is no adversity of interest between this settlor and his wife. If, in the face of adversity, the family interest required that these trusts be revoked and these trust funds revested in the head of the family for the purpose of creating a new family income, it would require a mind wholly aloof from human affairs to imagine for a minute that Mrs. Joseloff would not revoke these trusts, even though her husband, the grantor of the trusts, would not compensate her for her lost "adverse" interest. As was said in the case of *Fulham* v. *Commissioner*, 110 Fed. (2d) 916, at page 918, in judging the adversary interest of the person having the power of revocation where a family trust is involved, "realistic appraisal" is called for rather than a purely legalistic one. See also *Commissioner* v. *Casperson*, 119 Fed. (2d) 94.

The tenuous interests that Mrs. Joseloff has, if any, in the preservation of these trusts, as compared with the obvious tangible and immediate interests which she would achieve by the revocation of the trusts, in our opinion, require that her selfish interests in the trust be wholly on the side of their revocation and that those interests are not at all adverse to the interests of the settlor. It is, therefore, our opinion that the contentions of the respondent in this case should be sustained, but, in view of certain other issues not mentioned herein which have been conceded by the respondent,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

LEECH, BLACK, DISNEY, and KERN, *JJ.*, concur only in the result.