The CHASE NATIONAL BANK OF THE CITY OF NEW YORK—Trust Division —and Eileen June McDonald, Trustees of the Last Will and Testament of D. G. McDonald, Deceased, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Eileen June McDONALD, Executrix of The Estate of D. G. McDonald, Deceased, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Eileen June McDonald THOMPSON, Executrix of the Estate of D. G. McDonald, Deceased, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 15081–15083.

United States Court of Appeals Eighth Circuit.

Sept. 16, 1955.

Rehearing Denied No. 15083 Oct. 10, 1955.

James D. Conway, Hastings, Neb., for petitioners.

Carolyn R. Just, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to the Atty. Gen., with her on brief), for respondents.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Petitioners herein seek review of the correctness of decisions of the Tax Court of the United States, In re McDonald's Will, 19 T.C. 672, determining deficiencies against the petitioners.

The first two cases may be treated as one because they involve the same income tax deficiencies, one by the executrix of the estate and the other by trustees, who have admitted transferee liability if the deficiencies are sustained. These two cases determined income tax deficiencies for the calendar years 1944, 1945, 1946 and in 1947 to May 16, 1947, in the respective amounts of $26,681.29, $26,973.16, $19,076.55 and $28,047.73. The third case relates to estate tax deficiency in the amount of $335,471.29.

The facts as stipulated by the parties and as found by the Tax Court may be summarized as follows:

D. G. McDonald, hereinafter called the decedent, married Lenore E. McDonald in 1912 in Kansas. Neither had any property at the time of marriage. Shortly thereafter they moved to Kellogg, Idaho, where the decedent engaged in the general merchandising business and acquired an interest in several stores in Idaho. On or about July 1, 1913, the Kellogg store was consolidated into the J. C. Penney Company chain as Store No. 42. As a result, decedent acquired 20 shares of Penney classified common stock. Decedent managed the store until March, 1917, when he and his wife moved to St. Paul, Minnesota. In St. Paul decedent had supervision of a buying office for Penney and in 1922 was transferred to New York City where he was an executive and director of the company until severing all connections with it in 1929.

From July, 1913, to September, 1924, decedent acquired 1135 shares of Penney stock at a cost of $56,200.00. At least 185 of these shares were procured by him from other individuals, with the remainder being the exercise of options and rights arising from the original 20 shares. After various conversions, split-ups, and sales, decedent owned 21,204 shares of Penney common stock on November 10, 1930.

In the spring of 1930, Lenore and the decedent moved to California. The decedent intended to retire.

Decedent and Lenore McDonald had two children, a son, Delos, born December 13, 1914, and a legally adopted daughter, Nedra, born October 2, 1925. The family maintained a high standard of living, with the children being afforded every advantage of locale, travel, etc. Decedent and Lenore separated in September, 1930, and never lived together again.

On November 10, 1930, decedent created a trust entitled "Trust No. 924" with the Bank of America National Trust and Savings Association as trustee and decedent designated as trustor. Lenore joined in the instrument and assigned to the trustee and waived any community or other interest she had or would have in the trust res. Decedent transferred 12,000 shares of his Penney common stock to the trust and gave the trustee the usual powers.

Article I of the trust provided that the trustee could not sell any of the stock without written direction of the trustor and Lenore or survivor. Article III gave the trustor power to add additional property. Article V provided for the disposition of the income. If not sooner terminated, the trust was to terminate upon the death of the survivor of Lenore and Delos and the trustee was to distribute the entire trust estate to the issue of Delos, per stirpes, or, in the event of no surviving issue of Delos, to the trustor if living, and if not living to the executor or administrator of the trustor.

Article VI of the trust agreement read as follows:

"The Trustor reserves the right, while he shall be competent to act, and while Lenore E. McDonald, wife of the Trustor, shall be living and competent to act, to change or amend any of the provisions of this trust or any of the trusts hereby created, and also to revoke the trust in whole or in part and take out of the trust and remove from the operation thereof any part or all of the trust estate, provided, however, that any change or amendment of the trust shall be made only by written declaration or agreement, subscribed by the Trustor, Lenore E. McDonald, wife of the Trustor, and by the Trustee, and revocation, either partial or as to the whole trust, shall be by notice in writing, signed by the Trustor and Lenore E. McDonald, wife of the Trustor, and delivered to the Trustee. This trust shall not be subject to amendment or revocation after the death of either the Trustor or Lenore E. McDonald, wife of the Trustor."

On November 10, 1930, when the trust was created, decedent hoped for a reconciliation with Lenore, but about Christmas of that year Lenore advised him that she was going to get a divorce. Both were represented by counsel. Acrimonious negotiations concerning a property settlement and the divorce extended over a period of several months in 1931, lead-ing up to a written agreement between Lenore and decedent executed on November 30, 1931, and also to amendment, partial revocation, and addition to Trust No. 924 by instrument dated November 30, 1931.

On November 30, 1931, a complaint for divorce was filed which asserted that a property settlement had theretofore been entered into between the parties and prayed that the property settlement be embodied in the decree.

The property settlement agreement referred to in the complaint read in part as follows:

"Whereas, the parties hereto desire to forever settle and adjust their property rights, both present and future, including division of the community property of the parties, and

Whereas, the parties have agreed upon a full and complete settlement of all property rights including support and maintenance of the party of the first part and their children, and

\*　\*　\*　\*　\*　\*

2. The parties hereto agree that Trust No. 924, Bank of America, shall be so revised and amended as to permit the withdrawal therefrom of 5,500 shares of the J. C. Penney Co. stock now subject to said Trust, which said 5,500 shares shall be delivered to first party, free from the provisions of said Trust and shall become and be her sole and separate property. That there shall be added to said Trust by second party hereto an additional 500 shares of said J. C. Penney stock of the same kind, as is now covered by said Trust, making a total number of shares remaining in said Trust of 7,000;  \*　\*　\* "

Paragraph 4 of the agreement provided that it "is expressly understood and agreed that the property transferred and conveyed to first party under this agreement, and under said Amended Trust Agreement," now is and henceforth shall be her sole and separate property, and

second party relinquishes any interest which he has or hereafter may acquire in and to said property.

In paragraph 7 it was provided that each of the parties does relinquish, release, renounce, waive, and give up all interest or claim against the person, property, or estate of the other, "including the right of alimony, support, maintenance, and any and all rights of inheritance which shall be a part of the estate of the other, \* \* \* it being expressly understood that included therein is any community right, right of dower, right of homestead, right of former allowance, or any other right or claim \* \* \*" the parties have or may have.

Paragraph 10 stated that the income from the amended trust created for the benefit of the children would be the sole property of Lenore, with the understanding that it was for the purpose of supporting, educating, and maintaining said children. This provision was to be in full satisfaction of all obligations of decedent for support, etc., of the children.

The interlocutory judgment of divorce was filed on December 7, 1931, and embodied the property settlement, the original trust and the amended trust.

The amended trust agreement added the following to Article I of the original agreement:

"So long as any of the capital stock of the said J. C. Penney Company is held in this trust, the Trustee shall vote the said stock or shall execute and deliver proxies therefor in accordance with the written directions executed by the Trustor and the said Lenore E. McDonald during their joint lives, and executed by the survivor of them after the death of either, and delivered to the Trustee."

The amended trust agreement further directed the trustee to hold the trust estate in the proportions of six-sevenths for Delos and one-seventh for Nedra. The share of Delos was to be distributed to Lenore until Delos reached age 21, when he was to receive $3,600. yearly. At age 25 Delos was to receive all the net income from his share, and since December 13, 1939, it has been so distributed. Nedra's share was to be delivered to Lenore until Nedra attained the age of 18 years and after that was to be and has been distributed to Nedra. The principal of the share of each child was to be distributed to such child upon attaining the age of 35 years.

Article V(f) of the trust instrument as amended provided that in the event of the death of either of the children prior to receipt of their respective shares of the principal, the share held for such deceased child was to be distributed to (1) the issue, (2) if no issue but a spouse, one-third to such spouse, one-third to decedent and one-third to Lenore, (3) if neither a spouse nor issue surviving, one-half to decedent and one-half to Lenore, (4) in the event of the prior death of either decedent or Lenore, the share of such deceased was to be added to the share held for the benefit of the other of the children.

In Article XI of the amended trust it was agreed that the provisions of the trust were made pursuant to the terms of a property settlement and that the income paid to Lenore was to be for the benefit of the children, and was in full satisfaction of all legal obligations of said D. G. McDonald for such responsibility.

During the calendar years 1944, 1945 and 1946 and for the period January 1, 1947, to May 16, 1947, all the net income of Trust No. 924 was paid to Delos or Nedra. For these years the Trustee filed fiduciary income tax returns for the trust indicating that the net income was distributable to the beneficiaries, and for the same years Delos reported on his individual income tax returns the amounts distributed to him. Nedra reported her share as income in the years 1944, 1945 and 1946.

On January 21, 1946, the trust res of 7,000 shares of stock was increased 14,000 shares by virtue of a three-for-one split. The fair market value of the 21,000 shares of stock on the date of de-

cedent's death, May 16, 1947, was $829,-500.00 or $39.50 per share. After the death of the decedent, the Federal estate tax return was duly filed and the Commissioner, on June 28, 1950, mailed the petitioners a deficiency notice stating that the assets of Trust No. 924 were includible in decedent's gross estate. Prior to this, on January 17, 1949, the respondent notified the estate of the decedent that the income from the trust for the years in question was returnable as income of the trustor and therefore the estate was liable for the deficiencies. The petitioners sought a redetermination in the Tax Court and the court held that the Commissioner erred only in including the entire value of the assets of the trust in the gross estate. The portion of the value of the trust assets which it found represented the children's right to support ($30,000.00) was therefore subtracted from the fair market value of the trust as a transfer made "for an adequate and full consideration in money or money's worth" within the meaning of Section 811(d) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(d) (2).

From the Tax Court's decisions, the executrix of the estate and the trustees of the testamentary trust have appealed to this court on both the estate tax and income tax issues.

The petitioners contend that the Tax Court erred in determining a tax liability on either issue because the decedent was not the "grantor" of the trust under Sections 166 and 167, Internal Revenue Code of 1939, 26 U.S.C.A. §§ 166, 167, or the "transferor" to the trust under Section 811(d) (2). The pertinent portions of these sections are:

"§ *811. Gross estate.*

\* \* \* \* \* \*

"*(d) Revocable transfers*

\* \* \* \* \* \*

"(2) *Transfers on or prior to June 22, 1936.* To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the

enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph";

"§ *166. Revocable trusts*

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor."

"§ *167. Income for benefit of grantor*

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor;

\* \* \* \* \* \*

then such part of the income of the trust shall be included in computing the net income of the grantor."

Petitioners argue that since the decedent resided in Idaho, a community property state, during the time of the first acquisition of Penney stock, the subsequent acquisitions are also community property because they are increments of the original 20 shares. Therefore, being community property, one-half of the 21,-204 shares possessed at the time the trust was created would belong to Lenore and be held in trust by decedent. They claim that as a result the 12,000 shares forming the trust res were actually the property of Lenore and she was the grantor.

We cannot subscribe to this reasoning. It is obvious that under the laws of the State of Idaho, § 32–906, Rev. Code of Idaho, Lenore had a community property interest in the stock acquired in that state, but to trace the prolific shares into a subsequent fortune would disregard the labor, earnings, and acquisitions from others, which enabled decedent to exercise the rights and increase his holdings after leaving Idaho. Where the portion sought to be established as community property is impossible of ascertainment, none will be allowed. Johnson v. Commissioner, 8 Cir., 1939, 88 F.2d 952, Id., 8 Cir., 105 F.2d 454, certiorari denied, 308 U.S. 625, 60 S.Ct. 380, 84 L.Ed. 522; Estate of Heidt v. Commissioner, 8 T.C. 969, affirmed per curiam, 9 Cir., 1948, 170 F.2d 1021. The result is inescapable that decedent was the grantor of the trust. The trust instruments throughout speak of the decedent alone as the trustor, the stock transferred to the trust was held in the name of decedent alone, and the 5,500 shares delivered to Lenore in satisfaction of her marital rights were separated from the original trust, not from any other property of the decedent's. If the trust were considered the property of Lenore, she would scarcely have permitted the children's support to have been derived solely to her detriment. Rather, it would seem that the severance of the original trust fund into the amended trust and Lenore's separate share was a reasonable disposition of community property pursuant to the separation agreement.

All of petitioners' authority is rendered inapplicable when the basic premise of Lenore being the grantor fails; consequently, there is no point in discussing each case separately.

The next contention of the petitioners is that if the decedent was the transferor of the assets of the trust, such assets are not includible in the gross estate because the transfer was for adequate and full consideration in money or money's worth under Section 811(d) (2). The estate claims inter alia that the divorce proceedings show bitter arm's-length negotiations and a complete lack of donative intent. Petitioners cite various cases involving divorce settlements which were held to be not taxable as gifts, but were supported by full and adequate consideration in money or money's worth. Taurog v. Commissioner, 11 T.C. 1016; Harding v. Commissioner, 11 T.C. 1051; Harris v. Commissioner, 1950, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111. We are concerned here with a trust created for the benefit of children, not a settlement of property interests between the parties per se. The trust was created incident to and embodied in a divorce decree, it is true, but nevertheless it is subject to different treatment for tax purposes.

The situation in the instant case evinces an effort on the part of a father to provide for his children. Such is his legal duty. The tax statutes have respected this duty by considering amounts so paid or set aside as being exempt from the estate tax because supported by full and adequate consideration. The statute and decisions construing it, however, have determined that only that portion actually referable to the child's support shall be exempted. Petitioners would have us rule that the agreement of the parties, as confirmed by the divorce court, represented the proper

amount for child support, its veracity having been confirmed by bitter arm's-length negotiations. It will suffice to say that since both parties are interested in the support of their children, the method illustrated by the following cases is the more acceptable.

In Hooker v. Commissioner, 5 Cir., 1949, 174 F.2d 863, the husband and wife set up a trust for the benefit of their son, which trust was embodied in the divorce decree. The trust was subject to power to amend, alter or revoke with consent of the wife. The husband later put an additional amount of money into the trust and the court held it was taxable as a gift except for an amount adduced to be for support of the son. This amount, to be determined on remand, was considered to be an adequate consideration in money or money's worth. In Helvering v. U. S. Trust Co., 2 Cir., 1940, 111 F.2d 576, the court held in another similar situation that where a trust was set up for the benefit of the former wife and child of a divorced man, the fund was taxable except for the portion attributable to the support of the child. The court decided further that the cost of the child's support would need be determined by remanding the case to the trial court, even though the agreement between the parties (husband and wife) stated that at page 578 " "* * * it was contemplated that approximately one-third thereof should be allocated and devoted to the support and maintenance of the daughter during her minority'."

▮ The estate also assigns as error the method used by the Tax Court to determine the reasonable value of the support and maintenance of the children. It argues that $30,000 is a meager and arbitrary stipend for support of children who maintained the standard of living here in evidence. That is a question of fact and accordingly within the province of the trial court. A larger amount might have been found but this court may not substitute its judgment for that of the Tax Court and reverse on that basis "unless clear error appears". Nat. Brass Works v. Commissioner, 9 Cir.,

1953, 205 F.2d 104, 107; Clements v. Commissioner, 8 Cir., 1937, 88 F.2d 791; Helvering v. Taylor, 1935, 293 U.S. 507.

Petitioners further seek reversal on the grounds that the income of the trust is not taxable to decedent because Lenore had a substantial adverse interest in the disposition of the corpus and the income of the trust within the meaning of Sections 166 and 167 of the Internal Revenue Code of 1939.

Under Article VII of the trust, Lenore had a joint power with her former husband to amend, alter and revoke. Under Article V(f) she had a remainder interest in the trust corpus, contingent on the prior death of either primary beneficiary without issue. Whether such an interest is sufficiently adverse to disclaim the possibility of the grantor controlling the exercise of discretion by the other party is a question of fact to be decided with regard to the legal principles applicable to the interests created by the trust instrument. Mertens, Law of Fed. Income Taxation § 37.13 and cases cited. Judge Magruder, in Fulham v. Commissioner of Internal Revenue, 1 Cir., 1940, 110 F.2d 916, 918, states the proposition very well:

> "The evident policy of the Revenue Act is to tax the income to the grantor of a trust when he retains the substantial mastery over the corpus. Even though in form he lodges the power of revocation in someone other than himself, Section 166 is founded on the reasonable premise that the grantor still retains practical mastery, when this power is given to someone having no stake in the trust, or a stake so insubstantial that the holder of the power would not improbably be amenable to the grantor's wishes. *This calls for a realistic appraisal."* (Emphasis supplied.)

Concerning the contingent interest, it must be borne in mind that during the first taxable year Lenore was over 54 years old, Delos was 29 and Nedra 18. Both children were married. Delos had

a child and Nedra had a child the following year. Thus the possibility of either of the beneficiaries *and his issue* dying before reaching age 35, when the corpus was to be distributed, was somewhat remote. Where the possibility that contingent remaindermen will ever get anything is as remote as it is here, it cannot be considered a benefit amounting to a substantial adverse interest. See Cushman v. Commissioner, 2 Cir., 1946, 153 F.2d 510, 513–514; Joseloff v. Commissioner, 1947, 8 T.C. 213.

A substantial adverse interest likewise cannot be claimed by virtue of the parental interest of Lenore. As was said in Commissioner of Internal Revenue v. Prouty, 1 Cir., 1940, 115 F.2d 331, 335:

> "But we think the phrase 'substantial adverse interest' * * * means a direct legal or equitable interest in the trust property, and not merely a sentimental or parental interest in seeing the trust fulfilled for the advantage of other beneficiaries. Loeb v. Commissioner, 2 Cir., 113 F.2d 664, 666."

It should be further noted that in the event Lenore did acquiesce in a revesting of the income or corpus of the trust to the grantor, it would not ipso facto relieve him of his duty to support the children. Since their support is the object of the trust, Lenore's concurrence in revocation would not deprive her of any substantial interest. See Commissioner of Internal Revenue v. Caspersen, 3 Cir., 1941, 119 F.2d 94.

The estate contends that the ruling in the case of Commissioner of Internal Revenue v. Katz, 7 Cir., 1943, 139 F.2d 107 necessitates a holding adverse to the respondent. In that case, Meyer Katz created three trusts to provide independent wealth for his children. The trusts could be terminated only by writing of the grantor and his wife, or the child beneficiary after he reached 21 years of age. In the event of the death of a child prior to the termination of the trust, the income was to be distributed to the issue of such child; but in case such child died without issue, the income was to be distributed in equal shares to the grantor's wife and children surviving. Under these facts, it was determined that Mrs. Katz had a substantial adverse interest. In our opinion, the Katz case is as close to the nebulous line of demarcation between adverse interests which are substantial and those which are insubstantial as is the case at bar; but on the opposite side of the line. For Lenore to recover a portion of the trust res, either Delos or Nedra, plus his or her child, must have predeceased her; and do it within 6 years or 17 years respectively. Mrs. Katz needed only to survive any one of her children, none of them having issue during the taxable year. Lenore's possibility of benefitting from the trust was far more remote than that of Mrs. Katz. See also Joseloff v. Commissioner, supra. The Katz case is distinguished on the facts. We quite agree with the law as therein stated 139 F.2d at page 110:

> "As the law stands now, it is at most only one of the elements to be considered by the trier of the facts. While we are of the view that petitioner's contention with reference to this section presents a close question, yet we are not persuaded that the Board's finding is erroneous or that our judgment should be substituted therefor."

See Savage v. Commissioner, 4 T.C. 286.

█ The petitioners also point to the divorce decree and the property settlement as having been arrived at through arm's-length bargaining. This, they claim, negatived any presumption that decedent could have controlled the exercise of discretion by Lenore. We do not agree. We think the Tax Court was correct in holding that Lenore did not have a substantial adverse interest within the meaning of Sections 166 and 167.

Affirmed.