William S. **HALL** and American Fletcher National Bank and Trust Company, Co-Executors of the Will of Helen S. Hall, Deceased, Plaintiffs-Appellees,

v.

**UNITED STATES** of America, Defendant-Appellant.

No. 14908.

United States Court of Appeals Seventh Circuit.

Nov. 8, 1965.

Louis F. Oberdorfer, Asst. Atty. Gen.,
Tax Division, Gilbert E. Andrews, Atty.,
Dept. of Justice, Washington, D. C., Rich-
ard P. Stein, U. S. Atty., Indianapolis,
Ind., Lee A. Jackson, David O. Walter,
Robert F. Sama, Attys., Dept. of Justice,
Washington, D. C., for appellant. David
W. Mernitz, Asst. U. S. Atty., of counsel.

Albert W. Zimmerman, Thomas C. Col-
lier, Jr., Indianapolis, Ind., for plaintiffs
(appellees). Dunbar & Dunbar, Indian-
apolis, Ind., of counsel.

Before KNOCH, KILEY and MAJOR,
Circuit Judges.

MAJOR, Circuit Judge.

Plaintiffs are the Executors of the Will
of Helen S. Hall, who died February 18,
1960. A Federal Estate Tax Return was
duly filed, showing a tax in the amount of
$611.88, which was paid on or about May
18, 1961. Subsequently, the Commis-
sioner of Internal Revenue determined
and assessed a net deficiency in the
amount of $48,708.96, together with in-
terest in the amount of $3,920.74, which
amounts were paid on or about Septem-
ber 28, 1962. The deficiency determined
by the Commissioner resulted from inclu-
sion in the decedent's taxable estate the
value of a trust created by her in 1928,
in the amount of $193,361.17.

On October 24, 1962, plaintiffs filed a
claim for refund of said taxes and inter-
est, which was denied. Thereupon, the
instant action for refund was commenced
in the District Court. The Court filed
its findings of fact and conclusions of law
and, on July 30, 1964, entered judgment
against defendant in the sum of $53,-
205.37, with interest as provided by law.
From this judgment defendant appeals.

Plaintiffs on brief pose the issue for
decision as follows:

"Whether a taxpayer in valuing
a reversionary interest for purposes
of the Federal Estate Tax may, un-
der Sec. 2037 of the Int.Rev.Code of
1954, resort to methods of valuation
other than the actuarial tables refer-
red to in the Regulations, which
methods take into consideration the
state of mental and physical health
of the Decedent immediately prior
to death but which do not consider
the fact of death."

Defendant on brief states the issue:

"The narrow question presented by
this appeal is whether in determin-
ing the value of a reversionary inter-
est for purposes of Section 2037 of
the Internal Revenue Code of 1954,
extrinsic factors, such as the set-
tlor's state of health, may be consid-
ered, or whether the determination
of value must be made pursuant to
United States Life Table 38 without
consideration of state of health."

Thus, the issue is whether the value of
decedent's reversionary interest must be
determined solely from the table specified
in the Treasury's Regulations, as urged
by defendant, or whether other factors
may be taken into consideration, as urg-
ed by plaintiffs and as determined by
the District Court.

The decedent, on February 20, 1928,
created an irrevocable trust under which
the net income was to be paid to the set-
tlor for life, with remainders to her
daughter and son or to the survivor of

them. The instrument provided that should the settlor's son and daughter pre-decease her the trust should immediately terminate and be paid over to the settlor. Julia Jean Hall, the decedent's daughter, pre-deceased, and William S. Hall, the son, survived her. The date of birth of Helen S. Hall (decedent) was April 10, 1888, and that of William S. Hall, December 15, 1910. At the time of her death, decedent was about 72, and William S. Hall about 49 years of age.

Inasmuch as the method to be employed in valuing decedent's reversionary interest in the trust is the sole issue for decision, we need be concerned only with that portion of the statute pertaining thereto, in connection with relevant Treasury Regulations. Title 26 U.S.C.A. Sec. 2037, entitled, "Transfers taking effect at death," provides:

> "The value of the gross estate shall include the value of all property * * *, by trust or otherwise, if * * * the decedent has retained a reversionary interest in the property * * * and the value of such reversionary interest immediately before the death of the decedent exceeds 5 percent of the value of such property."

Paragraph (b) (2) provides:

> "The value of a reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death) *by usual methods of valuation,* including the use of tables of mortality and actuarial principles, under regulations prescribed by the Secretary or his delegate. [Italics supplied.]"

The issue before us revolves around the effect to be given the italicized words.

The District Court found:

> "9. The decedent's life expectancy immediately prior to death on February 18, 1960, without regard to the fact of death, did not exceed three years.

> "10. William S. Hall's life expectancy on such date was not less than fifteen years.

> "11. The value of the decedent's reversionary interest immediately before her death on February 18, 1960, without regard to the fact of her death, was not more than 2.61% of the value of the trust property."

Among its conclusions of law the Court stated:

> "3. The value of the reversionary interest in the trust in question, under the provisions of Section 2037 of the Internal Revenue Code of 1954, was erroneously valued by defendant under the facts of this case in that it was based solely upon a mortality table prescribed by Title 26, Code of Federal Regulations, Section 20.2037-1.

> "4. The reversionary interest in question, under the provisions of Section 2037 of the Internal Revenue Code of 1954, must be valued on the basis of the actual life expectancy based upon the facts of the case.

> "5. The value of decedent's reversionary interest in the trust in question was less than 5% and is, therefore, not includible in the decedent's gross estate under Section 2037 of the Internal Revenue Code of 1954."

Plaintiffs introduced a large amount of medical testimony relating to the decedent's physical and mental condition, covering a period of many years. Also, testimony was given relating to the physical condition of William S. Hall, the trust beneficiary. Plaintiffs also introduced the testimony of actuarial experts who determined from the medical history of the two persons the life expectancy of each. Using this determination in connection with the mortality table, as suggested by the Treasury Regulations, these expert witnesses concluded that the value of decedent's reversionary interest was not more than 2.61% of the value of the trust property. On the other hand, defendant introduced the testimony of its expert, an employee of the Internal Revenue Service, who testified that the value of decedent's reversionary interest was 9.413% of the value of the trust

property. This conclusion was based solely on United States Life Table 38.

In view of the narrow question for decision, there is no point in relating in detail the medical testimony as it relates to the state of health of either the decedent or William S. Hall. The same may be said as to the actuarial testimony determining the life expectancy of each based on their medical history, and in fixing the value of decedent's interest in the trust. This is so because defendant objected to the admission of such testimony solely on the ground that it was irrelevant and immaterial. If it was properly admitted, no question is raised but that it supports the findings made by the Court.

Dr. Albert Hanley Held testified that he treated decedent from 1951 through 1956; that she was a pathological alcoholic; that her condition progressively deteriorated and she required constant attention to prevent her from over-indulging in the use of alcohol, drugs, etc.; that she was under the constant care of a trained psychiatric nurse and that without such care her expectancy would have been no more than seven months.

Dr. Stephen Smith III stated that he had treated decedent periodically from 1955 until her final admission to Las Encinas Hospital in 1956, and was her attending physician in the hospital until her death in 1960; at the time of her admission, decedent was suffering from hypertension, hepatic insufficiency, gall bladder difficulty and miocardial failure; while in the hospital she developed diabetes mellitus which was regulated with insulin, and died on February 18, 1960, as a result of a massive cerebral hemorrhage. Dr. Smith stated that in his opinion the life expectancy of decedent immediately prior to death, without considering the fact of her death, was from one to three years.

Dr. Wendell A. Shullenberger, the attending physician of William S. Hall, testified as to certain minor ailments of Hall and expressed the opinion that his life expectancy on February 18, 1960 was fifteen to twenty years, whereas the normal expectancy would have been approximately twenty-four years.

John W. Ballenger, an underwriter of special and substandard risks for American United Life Insurance Company, reviewed decedent's medical history and determined that she should be rated in excess of 1,000% mortality, or ten times greater than a normal person who carries a 100% mortality. He likewise reviewed the medical record of William S. Hall and determined that he also was a substandard risk, carrying 200% mortality, or twice that of a normal person.

Fred DeBartolo, an insurance actuary, based upon the foregoing testimony as to mortality determined that William S. Hall had a life expectancy of 17.7 years and that decedent had a life expectancy of 1.5 years. He determined that the value of decedent's interest in the trust on February 18, 1960, using the Insurance Commissioner's standard ordinary table of 1958, was 2.35%, not considering the fact of her death or the immediate cause of her death. Using the table specified by the Commissioner of Internal Revenue, designated as Table 38 in Publication No. 11, revised May 1959, it was determined by the witness that the value of such reversionary interest on the same date was 2.61%.

■ As previously noted, paragraph (b) of Section 2037, with reference to the valuation of reversionary interest, in pertinent part provides, " * * * shall be determined * * * *by usual methods of valuation,* including the use of tables of mortality and actuarial principles, under regulations prescribed by the Secretary or his delegate. [Italics supplied.]" It is plain that the statute does not contemplate that valuation shall be determined in all cases solely by the use of tables of mortality and actuarial principles prescribed by the Secretary, as is argued by defendant. What the statute provides is that such valuation shall be determined "by usual methods of valuation," including mortality tables prescribed by the Secretary.

The interpretation of this provision urged by defendant would eliminate the

italicized phrase so that it would read, "The value * * * shall be determined * * * by the use of tables of mortality and actuarial principles, under regulations prescribed by the Secretary * *." Defendant's contention is emphasized by the testimony of its expert witness who concluded that the value of decedent's reversionary interest was 9.413%, based entirely upon U.S. Life Table 38, set forth in the Treasury Regulations. He completely ignored, as defendant does on brief in this Court, the statutory provision that such valuation shall be determined "by usual methods of valuation."

We think no good purpose could be served in setting forth the lengthy and complicated Treasury Regulations designed to cover a wide variety of situations. Particularly is this so in view of defendant's statement on brief, "The value is ascertained in accordance with recognized valuation principles for determining the value for estate tax purposes of future or conditional interests, in property. See Treasury Regulations, Secs. 20.2031–1, 20.2031–7, and 20.2031–9."

Regulation 20.2031–1 provides:

"Valuation of Property in General * * * All relevant factors and elements of value as of the applicable valuation date shall be considered in every case."

Defendant's admission that value is ascertained "in accordance with recognized valuation principles" and the regulation lastly quoted, "All relevant factors and elements of value * * * shall be considered in every case," are consistent with the statutory provision that value shall be determined "by usual methods of valuation, including the use of tables of mortality * * * under regulations prescribed by the Secretary * * *."

■ Even so, defendant on brief, as did its expert witness, places its reliance on Regulation 20.2031–7, which provides that value shall be computed upon the basis of mortality table 38 of United States Life Tables published by the United States Department of Commerce. We do not understand this regulation to require that value be determined solely on the mortality table. If so, it contravenes not only the statutory provision but is inconsistent with Regulation 20.2031–1, which provides that all factors and elements of value be considered in every case. Thus, even under the Treasury Regulations, we think that the District Court correctly considered factors other than the age of the decedent, such as her physical and mental condition, in determining the value of her reversionary interest.

No case is cited and we find none in which the question for decision has been considered. Defendant on brief, without any good purpose we think, dwells upon Estate of Spiegel et al. v. Commissioner of Internal Revenue, 335 U.S. 701, 69 S. Ct. 301, 93 L.Ed. 330. In that case the principal question for decision was whether the decedent had a reversionary interest in a trust which required inclusion of the trust corpus in his estate. The Court held that he had such an interest. In the case before us, it is conceded that decedent had a reversionary interest, and we are concerned only with its value. Of course, Spiegel is of some interest because of the fact that the value of decedent's interest at the time of his death was less than $70.00, which caused the inclusion in the decedent's gross estate of a trust corpus of $1,140,000, and the imposition of a tax of about $450,000.

As defendant states on brief, "The obvious inequity and harshness of such a result caused Congress to introduce the 5 percent requirement in the so-called Technical Changes Act of 1949." Thus, Congress in attempting to alleviate the harshness of the result in Spiegel in effect exempted from inclusion in a decedent's estate trust property wherein the value of the reversionary interest does not exceed 5%. In doing so it provided that the value of such interest should be determined "by usual methods of valuation," including the use of mortality tables prescribed by the Secretary.

■ There can hardly be doubt on this record but that "usual methods of valuation" require or at least permit taking into consideration the life expectancies

of the parties involved. The mortality table solely relied upon by defendant is based upon the life expectancy of the average or normal person. In the instant case, the decedent for nine years prior to her death, the last four of which were spent in a hospital, was in a progressively declining state of health until at the time immediately before her death she had, as found by the Court, a life expectancy not to exceed three years. More than that, the value of her reversionary interest was further limited by the highly improbable contingency that she outlive her son, William S. Hall, who had a life expectancy of not less than fifteen years.

To hold, as defendant would have us do, that these circumstances must not be taken into consideration in valuing decedent's reversionary interest is to ignore realism and common sense. Certainly we are not persuaded that Congress intended such a result. In fact, the language which it employed in relieving the harshness resulting from Spiegel is of sufficient scope to prevent the harshness which would follow from an approval of defendant's contention.

The judgment appealed from is Affirmed.