**Richard S. RIGHTER, Executor of the Estate of Edna Beaham Mersereau, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 15478-2.**

United States District Court
W. D. Missouri, W. D.

Sept. 27, 1966.

Howard A. Crawford and Irvine O. Hockaday, Jr., of Lathrop, Righter, Gordon & Parker, Kansas City, Mo., for plaintiff.

Stephen Koplan, Tax Division, Dept. of Justice, Washington, D. C., and F. Russell Millin, U. S. Atty., Western District of Missouri, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION

COLLINSON, District Judge.

This is a suit for refund of estate taxes and a gift tax which the plaintiff, in his capacity as executor, paid under protest. The factual situation from which the assessment of both taxes arose is identical, and the facts themselves are undisputed, although they were not stipulated at the trial.

The decedent, Mrs. Edna Mersereau, at the time of the transaction which gave rise to the dispute, was the widow of a prominent Kansas City attorney who had been a partner in the law firm of which the plaintiff executor is a partner. She had no children, but had one brother and one sister. Her brother had two sons but her sister was unmarried, and decedent resided with her. The decedent, her sister, and her brother, Mr. Gordon T. Beaham each owned approximately one-third of all the common stock of the Faultless Starch Company. The decedent's sister, Miss Helen Beaham, died on January 5, 1950, and Mrs. Mersereau learned immediately that she had left her shares in the Faultless Starch Company to the two nephews, Gordon, Jr. and Tom Beaham. Mrs. Mersereau contacted members of the law firm above mentioned, who were also attorneys for the entire Beaham family and for the Faultless Starch Company, and notified them that she intended to contest this will. Mrs. Mersereau's contention was that she and her sister had had an oral agreement and understanding that they would each devise their shares in the

Faultless Starch Company to the other for life, with the remainder to go to the nephews. It was Mrs. Mersereau's contention that her sister had been in bad health and that undue influence had been exercised by her brother Gordon to cause her to change her will and leave the stock as she did. Mrs. Mersereau was very angry and consulted this firm about this suit before the funeral of her sister and threatened that if they did not bring the case she would employ other counsel immediately. She had a number of consultations with lawyers over this matter and continually threatened that she was going to change her will and leave all of her property to a college, and this, of course, would include her one-third shares of the Faultless Starch Company stock. The Beahams, father and sons, were very disturbed about the threat of a will contest suit and also disturbed about the stock in the company, which had always been a family owned corporation, passing out of the family. The nephews were also concerned about their father and the effect of a lawsuit, scandalous in nature, affecting his health, which was not good. After two weeks negotiations the matter was settled and it was this settlement which gives rise to the present dispute over taxes on Mrs. Mersereau's estate.

The settlement was consummated by an executed agreement between Mrs. Mersereau and the two nephews and the execution of a trust indenture creating an irrevocable inter vivos trust naming the Commerce Trust Company of Kansas City trustee. By the terms of this agreement and trust Mrs. Mersereau covenanted not to contest the will of her sister and transferred all of her shares in the Faultless Starch Company to the trust estate. The two nephews transferred one-half of the stock that they inherited under Miss Helen Beaham's will to the trust estate, and the trust indenture provided that Mrs. Mersereau was to receive the entire income from the trust for her lifetime, and, in addition, the right to vote all of the shares which she placed in trust. It was further provided that upon her death all of the stock in the trust should be divided equally between the two nephews or their heirs. This indenture further provided that upon the death of Mrs. Mersereau all the estate taxes and inheritance tax arising out of the transaction would be paid by the testamentary estate of Mrs. Mersereau. Although not material to the issues in this case, it was established that both Miss Helen Beaham and Mrs. Mersereau were women of considerable wealth in addition to their stock in Faultless Starch Company.

This trust indenture was executed and the transfer of stock was made in January of 1950, and Mrs. Mersereau died December 27, 1961. During her lifetime she received in dividends from the shares of stock placed in the trust estate by her nephews the sum of $229,890.00. In computing the estate tax the shares of stock which Mrs. Mersereau placed in the trust estate were valued at $379,200.-00, and the parties are agreed upon this valuation. Section 2043 of the Internal Revenue Code allows this value to be reduced by "the value of the consideration received therefor by the decedent." It is the interpretation of this section that gives rise to the dispute involving the estate tax. The plaintiff deducted the amount of the dividends, $229,890.00, received by Mrs. Mersereau on the shares of stock transferred into the trust by her nephews as the consideration received for the reversionary interest of the shares she placed in trust. The Government contends that the consideration received by Mrs. Mersereau (and all that the estate can take credit for) is the value of the life estate in the stock which she received at the time of its transfer, January, 1950, based on Mrs. Mersereau's age and actuarial tables. Computed on this basis, the consideration is only $35,-773.16, and the Government computed the tax on this basis and assessed a deficiency which the plaintiff paid and for which refund is sought in the first count of this petition.

This estate tax is governed by §§ 2036 and 2043(a) of the Internal Rev-

enue Code, and Treasury Regulations 20.-2031–1(b) and 20.2043–1. These sections require that the value of the shares the decedent placed in the trust be included in her gross estate, because she retained the right to the income from the property for life; but further provide that if the transaction was (1) for a consideration in money (2) "but is not a bona fide sale for an adequate and full consideration in money" (both elements are stipulated) only the "excess of the fair market value at the time of death" over the value of the consideration received by the decedent is to be included in the gross estate.

■ The language is plain and its meaning simple. The tax is assessed only after the person receiving the deductible consideration has died. The exact amount of the consideration received is susceptible of exact proof. There is no need to resort to actuarial tables or any form of a crystal ball to determine the precise amount to be included in the gross estate.

■ All of the cases cited by the Government to support its position involve the opposite factual situation. In those cases, a tax is due and must be computed at the time a life estate is created, and the value of the life estate must be ascertained at that time. Statistical probabilities are the fairest known method in the average case, Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), but even in this situation actuarial statistics are not controlling if other factors show them inapplicable. Hall v. United States, 353 F.2d 500 (7th Cir. 1965).

The facts in the case of Nourse v. Riddell, 143 F.Supp. 759 (S.D.Cal.1956), are almost identical with the instant case. In overruling the same contention by the Government the court said:

"Mortality tables are opinion evidence at best. Lacking better evidence concerning the length of a person's life, they might be sufficient upon which to base a tax. For instance, in determining whether or not a gift tax would be due under a transfer retaining income for life, the application of such opinion evidence may be the best evidence available to determine the probable length of life of a person still living. But where better evidence is at hand, the courts will accept it, as was done in Estate of Denbigh, supra. It is easily possible that a gift tax may be payable at the time of the creation of a trust but that no estate tax be payable on a death terminating the trust.

But the court is not required in this case to depend upon the Mortality Tables or the opinions of actuaries and experts to determine the length of the life of Elizabeth Nourse from the time of the execution of the trust in 1937. It has the benefit of the facts as they occurred. She lived 13 years 8 months and some days. No better evidence of the life expectancy of a person on a given date can be had than the actual length of time that person lived after that date."

The court then allowed the exact amount received to be deducted, exactly as the plaintiff did in this case.

We believe the Nourse case is and should be the law governing this factual situation and hold that the plaintiff is entitled to a judgment on the first count of his petition for the amount prayed.

■ Also arising from the above facts the Government imposed a gift tax upon the estate, contending that the 1950 transaction constituted a gift of the reversionary interest in the stock which Mrs. Mersereau placed in the trust. This tax was based on Section 1002 of the 1939 Revenue Code which was then in effect as follows:

"Transfer for less than adequate and full consideration. When property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a

gift, and shall be included in computing the amount of gifts made during the calendar year."

Based on this statute the Government determined that the shares of stock placed by Mrs. Mersereau in this trust were not transferred for a full and adequate consideration, deducted the value of the life estate she received in the shares transferred by her nephews (computed on the basis of actuarial tables), and assessed a tax on the remainder, plus 25% penalty. This was all paid and the second count of the petition is a claim for refund of this amount.

At the time of the transfer in trust Treasury Regulation 108 Section 86.8 was in effect. It reads as follows:

"Transfers reached by the statute are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts, but embrace as well sales, exchanges, and other dispositions of property for a consideration in money or money's worth to the extent that the value of the property transferred by the donor exceeds the value of the consideration given therefor. *However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth.* A consideration not reducible to a money value, as love and affection, promise of marriage, etc., is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gift. (emphasis added)

The plaintiff contends that the *italics* portion of the regulation exempts this transaction from liability for a gift tax.

The Government, of course, views with suspicion any "settlements" between relatives which involve the transfer of property which would otherwise be subject to gift or estate taxes. In this case there are several elements present which the Government contends demonstrate that a donative intent entered into the transaction: The donees were the decedent's only blood relatives in the succeeding generation; the stock itself constituted one-third of the stock of a very prosperous family held corporation; there was no claim of any kind asserted by the nephews against the aunt or against the stock; the aunt expressed no animosity toward the nephews, only toward their father; there is no evidence that the threatened will contest suit had any merit; decedent never employed lawyers to file such a suit.

The plaintiff cites a number of cases which directly hold that while compromise and settlement of disputes over property between family members are hardly "made in the ordinary course of business," nevertheless, "even a family transaction may for gift tax purposes be treated as one 'in the ordinary course of business' as defined in this Regulation if each of the parenthetical criteria is fully met." Rosenthal v. C. I. R., 205 F.2d 505 (2d Cir. 1953). But in all the cases cited which involve family transactions, a claim of some kind was being asserted against the transferor or settlor, which was compromised by the transfer of property.

In the instant case the two nephews were asserting no claim of any kind against their aunt. She was asserting the claim that their legacy was tainted and she was going to contest their right to it. They transferred to her a life interest in one-half of their inheritance for her covenant not to bring this suit. In addition she transferred to them a reversionary interest in stock which she owned outright, and which was valued at a great deal more than the life estate she received. The Government contends that these facts demonstrate that a donative intent on her part must have existed.

But let us examine the undisputed facts. Each of the nephews had inherited 158 shares of stock in the family corporation of which their father was president. In the previous year, the cor-

poration had paid $260.00 per share dividend. Their expectations were that some day they would inherit Mrs. Mersereau's stock and their father's stock. Now, Mrs. Mersereau was not only threatening a lawsuit over their present inheritance, but threatening to leave her stock to some charity. Even if the suit was successfully defended, it was not only distasteful, but the scars of such a suit, won or lost, would undoubtedly result in Mrs. Mersereau carrying out her threat.

On the other hand, the evidence discloses that Mrs. Mersereau was a lady who was principally interested in a large income for the rest of her life. She had no interest in amassing an even larger estate, but only in increasing her income. As a lawyer's widow, and a woman of considerable business acumen, she knew the hazards in her lawsuit. If she was successful in her suit and the will was set aside, she would inherit the stock equally with her brother.

When all these factors are taken into account, the compromise that was reached seems most logical, satisfactory and businesslike. Although not fearful of the outcome of a lawsuit, the nephews gave up a large present income, but received, without fear of revocation, the assurance that they would in due time own all the corporation. The latter consideration was more important to them than settlement of the threatened suit.

From Mrs. Mersereau's viewpoint, she received the income for life from a block of stock which had drawn over $40,000.00 in dividends in the preceding year, and only gave up the right to determine to whom considerably less than half her estate should go after her death (and she had no direct descendants). Parenthetically, like most we mortals, she probably did not believe mortality tables applied to her, and, unlike most of us, she was right.

From all of the above facts, the Court finds that each of the "parenthetical criteria" was present, namely; "a transaction which is bona fide, at arm's length, and free from any donative intent."

This conclusion is strengthened by the fact that Mrs. Mersereau's will left nothing to the nephews, only some personal jewelry to their wives and children, and disposed of a gross estate of almost a million dollars.

This opinion shall serve as findings of fact and conclusions of law pursuant to Rule 52(a) of the Rules of Civil Procedure.

Counsel for plaintiff are directed to prepare, file and serve on opposing counsel a proposed judgment for the Court's approval within ten days.