**UNITED STATES of America, Appellant,**

v.

**Richard S. RIGHTER, Executor of the Estate of Edna Beaham Mersereau, Deceased, Appellee.**

**No. 18869.**

United States Court of Appeals Eighth Circuit.

Aug. 26, 1968.

Martin T. Goldblum, Atty., Dept. of Justice, Washington, D. C., for appellant; Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, Washington, D. C., and F. Russell Millin, U. S. Atty., Kansas City, Missouri, were with him on the brief.

Howard A. Crawford, of Lathrop, Righter, Gordon & Parker, Kansas City,

Mo., for appellee; Irvine O. Hockaday, Jr., Kansas City, Mo., was with him on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

This case presents a federal estate tax issue under § 2043(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 2043(a).[1] The statute concerns the measure of includability in the gross estate of a decedent's inter vivos transfer made for an insufficient consideration. The United States appeals from the judgment entered in favor of the representative of the estate in his suit for refund of estate and gift taxes paid. The gift tax issue, however, is not urged on the appeal. The district court's memorandum is Righter v. United States, 258 F.Supp. 763 (W.D.Mo.1966). Estate tax in excess of $50,000 is in controversy. Jurisdiction is established.

The basic facts for the most part are stipulated. They are recited in the district court's opinion, pp. 764–765 of 258 F.Supp., and need not be repeated in full detail here. It suffices for us to say: The decedent is Edna Beaham Mersereau. She died December 27, 1961. Her unmarried sister Helen died January 5, 1950. Edna's threatened contest of Helen's will was settled with the execution of an agreement and of a trust indenture on January 18, 1950. Pursuant to the provisions of these instruments Edna transferred to the trustee her 316 shares in a family corporation and two nephews transferred to the trustee 158 shares of the same stock. The 474 shares comprised the corpus of the trust. Each transferor retained voting rights in the shares respectively transferred. The indenture provided that Edna was to be paid the dividends, net after trustee's charges, which were received on all the trust stock so long as she lived, and that upon her death the trust was to terminate and the stock was to be distributed to the nephews.

Edna's estate was of a size sufficient to require the filing of a federal estate tax return and to incur federal estate tax. Timely election, under § 2032, of the optional valuation date was made. Except for her receipt of consideration, the 316 shares Edna transferred to the trust would be fully includable in her gross estate, under § 2036(a) (1), because of her lifetime retention of the right to the income therefrom. See Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949). The 316 shares were valued as of the optional valuation date at $379,200. The figure is stipulated and is not in controversy.

It is also stipulated that the transfer of the 316 shares "was made for a consideration in money or money's worth" and that the measure of the shares' includability in Edna's gross estate is, under § 2043(a), only "the excess of the fair market value of said shares one year after the date of decedent's death over the value of the consideration received therefor by decedent". It is agreed that the value of what Edna transferred was greater than the value

1. "§ 2043. Transfers for insufficient consideration

(a) In general.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent."

The statute is not new. It has an antecedent in § 811(i) of the 1939 Code. Nevertheless, Judge Tannenwald of the Tax Court, in speaking of § 2043(a), has observed that in a number of respects "its ramifications are not clear". Estate of Donald M. Nelson, 47 T.C. 279, 289–290 (1966), reversed on other grounds and remanded, Commissioner of Internal Revenue v. Nelson's Estate, 396 F.2d 519 (2 Cir. 1968).

of what she received. The consideration received by Edna was the interest for her life in the 158 shares transferred by the nephews. How that consideration is to be evaluated is our problem.

From the inception of the trust in 1950 until her death in 1961, Edna received from the trust dividends on the 158 shares in the total amount of $229,890. According to tables utilized by the Internal Revenue Service, Treas.Regs. 105, § 81.10(i), the present worth on January 18, 1950, of a life estate in a fund consisting of the 158 shares,[2] for a female of Edna's age on a 4% base, was $35,773.16.

During each of the ten years immediately preceding 1950, the stock in question paid dividends; for that decade these averaged $105.50 per share per year. The dividends paid in 1949 were $260 per share. For the nine years 1940–48, inclusive, the average was $88.33 per share. On the 158 shares the dividends in 1949 alone amounted to $41,080; for the ten years 1940–49, inclusive, they totalled $166,690.

The controversy is whether "the value of the consideration received therefor by the decedent" is $229,890 (the total paid the decedent from the trust) or $35,773.16 (the 1950 present worth, as the Service would determine it) or, perhaps, some other amount. The government presses the smaller figure upon us and the estate the larger. Inasmuch as the figure properly to be employed serves to reduce the amount includable in the gross estate, the estate benefits estate-taxwise by a large figure and loses by a small figure.

The district court concluded, primarily upon what it regarded as the authority of Nourse v. Riddell, 143 F.Supp. 759 (S.D.Cal.1956), that the includable transfer is to be reduced by the total Edna received from the trust, that is, $229,390. Thus, in a situation such as this, assuming the consideration property to be continuously productive, the dis-

trict court's decision means that the longer a decedent lives, the greater is the consideration received and the smaller is the net addition to the gross estate.

We disagree with the trial court's analysis of the law and reverse and remand.

A. The initial and basic question is the one relating to time, that is, whether "consideration received" is to be determined as of the date of the transfer or, on the other hand, is open to measurement by the actual dollar receipts on the consideration property during Edna's lifetime.

The estate's argument is that the statute, when it speaks of "the consideration received therefor by the decedent", is "plain, simple language" and means precisely what it says, that is, receipts by the decedent, which here consist of the dividends paid to Edna through the trust on the 158 shares between the date of the nephews' transfer and the date of her death. This reasoning is said to be buttressed by the facts that the value of property subject to federal estate tax is always determined as of the date of death or as of the optional valuation date; that the estate tax is computed and assessed only after death; and that the use of mortality tables or other evaluation device is unnecessary here where what Edna received is susceptible of exact proof.

We can agree that the language of the statute is plain and simple and that it means what it says, namely, consideration received. But going this far does not take us to the resolution of the issue. The obviously critical factors are "consideration received" and when that consideration is received. It is at this point that we part company with the reasoning of the estate and of the district court and where we feel the court fell into clear error of law. We hold that the statute means consideration received by the transferor-decedent as of the date the transfer for the insufficient

---

2. The record does not reveal for us what per share value was ascribed by the Service to the stock as of January 18, 1950.

consideration is made, not as of the subsequent date of the decedent's death; that, therefore, the consideration Edna received is to be valued as of January 18, 1950; and that her lifetime dollar receipts from the consideration property are not the governing measure of value. A number of factors support this conclusion:

1. The trust transaction was in January 1950. That is when the deal was negotiated, when it was closed, and when the opposing transfers to the trustee were effectuated by Edna and by the nephews. That is when the consideration for Edna's own transfer passed to her. Timewise, therefore, the focus must be on the vital date in 1950 and not on the post-transfer fortunes of income return, good or bad, during the ensuing years of Edna's life. In this sense, we read the statutory words "consideration received" in the present tense, not as "income received on the consideration property as long as the decedent lives".

2. The emphasis in the cases is on consideration as of the time of the transfer and is not related to some subsequent date. "And the consideration received is to be valued at the time of the transfer * * *." Estate of Vardell v. Commissioner of Internal Revenue, 307 F.2d 688, 693 (5 Cir. 1962); United States v. Past, 347 F.2d 7, 14, footnote 6 (9 Cir. 1965); Estate of Lillian B. Gregory, 39 T.C. 1012, 1021 (1963); D. G. McDonald Trust, 19 T.C. 672, 690 (1953), aff'd Chase Nat'l Bank of the City of New York v. C. I. R., 225 F.2d 621, 627 (8 Cir. 1955), cert. denied 350 U.S. 965, 76 S.Ct. 434, 100 L.Ed. 838; Helvering v. United States Trust Co., 111 F.2d 576, 578–579 (2 Cir. 1940), cert. denied 311 U.S. 678, 61 S.Ct. 45, 85 L.Ed. 437. See Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S. Ct. 291, 73 L.Ed. 647 (1929); Edith M. Bensel, et al., Executors, 36 B.T.A. 246, 253 (1937), aff'd 100 F.2d 639 (3 Cir. 1938).

3. Admittedly, the use of the transfer date for evaluating the consideration and the use of the death or optional valuation date for evaluating the includable property may produce, on occasion, a strange or curious result. This may happen when the consideration property is a fee interest, is retained, and substantially changes in value between the transfer date and the estate tax valuation date. The dissent in United States v. Past, supra, p. 17 of 347 F.2d, noted this and there suggested a resolution of the problem by the use of value ratios. See, also, the closing sentence of Judge Learned Hand's opinion in Helvering v. United States Trust Co., supra, p. 579 of 111 F.2d. But the facts may cut either way. The difficulty, if there be one, lies in the statute; a result of this kind is not unusual in tax law and we are not disturbed by it.

4. The estate, as has been indicated, makes much of the fact that the taxable event is Edna's death. This is not to be denied. That fact, however, does not require that total income from the consideration property be the measure of the consideration received. What we are concerned with here is the inter vivos transfer by the nephews in January 1950. The estate, it seems to us, confuses the taxable event of Edna's death with the transfer, completed twelve years earlier, of the consideration property.

5. The estate's argument that "consideration received" is to be measured by total life income is necessarily at cross purposes with the determination of when a transfer, within the statute's language, "is not a bona fide sale for an adequate and full consideration in money or money's worth". That determination can only be made at the time of the transfer and cannot be deferred and made to hang on future fortuitous circumstances of longevity and of income.

6. The estate's desire to measure income received is also at odds with the character of a life estate. The estate's approach, in practice, increases the value of that life estate with each passing year and as income is realized. Normally, however, a life estate's value decreas-

es with each passing year and expires with death.

7. If the nephews' transfer to the trust had consisted of cash in an amount precisely equal to the then value of Edna's transfer, no one could argue that Edna's transfer was anything other than one for an adequate and full consideration. It is then that the bona fide sale and adequate consideration character would be determined and there would be no question of includability in Edna's gross estate under § 2036(a) (1) and § 2043(a). But that cash, when invested by the trustee, would produce income which, under the agreement, would be distributable to Edna during her life. It would be a remarkable coincidence if the total income received by her would, by the time of her death, agree precisely with the amount of cash transferred by the nephews. Yet the estate's argument, if carried to its logical end, would have us ignore the transferred cash and pay attention to the investment income.

8. It is evident, we think, that had Edna died soon after the inception of the trust and before any dividends were received by the trustee, or if the trust corpus were non-productive, the estate would not be conceding that no consideration was received by Edna for the property she transferred or that there was no reduction available under § 2043(a). Yet this is the result compelled by a rule which measures consideration by lifetime receipts. Obviously this is not the intent of the statute.

9. There is nothing improper or unusual, in tax law, in having death tax consequences flow from a pre-death event and, at the same time, in having evaluation for estate tax purposes directed to the date of death or optional valuation date. This is true of any inter vivos less-than-full-consideration transfer which is includable in the gross estate, as, for example, one made in contemplation of death (§ 2035), or one with a life estate retained (§ 2036), or one with a reversionary interest retained (§ 2037), or a revocable transfer (§ 2038). And, of course, although the point is of no significance here, a transfer may have both gift tax and estate tax significance and different valuation dates; but the estate tax law (§ 2012) makes provision for credit for gift tax paid on the includable transfer.

10. Valuation by measuring income may lead to difficulties in practice. What if the consideration property is destroyed or lost or given away or dissipated or rendered non-productive? In the situation where no trust is present, it is possible, perhaps likely, that the decedent would sell and not retain the consideration property. And if it was sold, do we have a tracing problem which must be resolved before "consideration received" can be measured or is consideration then to be, as the estate asserts, the income plus the sale price?

11. Anomalous results may ensue with evaluation based upon total income. During Edna's 12-year life after the inception of the trust she received $229,890 from the consideration stock. Income totalling thus may well produce an amount obviously in excess of even a liberal view of basic value. It is doubtful, as the government suggests, that in January 1950 or at any time thereafter during Edna's life anyone would consider paying $229,890 for her income interest in the 158 shares. Further, at the optional valuation date the agreed value of the entire fee interest in 158 shares was only $189,600, a figure much less than the $229,890 which the estate proposes as the consideration received for the mere life interest.

12. We find no case where income received has been totalled and used as the measure of consideration received. The cases consistently use a mortality table or some other method. United States v. Past, supra, p. 13 of 347 F.2d, including the dissent, p. 17; Commissioner of Internal Revenue v. Estate of Nelson, 396 F.2d 519 (2 Cir. 1968); Gordon v. United States, 263 F.Supp. 768 (W.D.Texas 1967); Puchner v. United States, 274 F.Supp. 704, 707 (E.D.Wis. 1967); Smith v. United States, 277 F.

Supp. 583, 592–593 (M.D.Fla.1967); Whiteley v. United States, 214 F.Supp. 489, 495–496 (W.D.Wash.1963); D. G. McDonald Trust, supra, p. 690 of 19 T.C.

13. In the cases just cited the income measure issue was not specifically raised. It was advanced, however, and flatly rejected in Estate of Lillian B. Gregory, supra, pp. 1020–1021 of 39 T.C. There is also a state inheritance tax case where it was rejected. In re Stevens' Estate, 163 Cal.App.2d 255, 329 P.2d 337, 342 (1958).

14. In Estate of Vardell v. Commissioner, supra, p. 693 of 307 F.2d, the majority gave some heed to the total-income-received argument in connection with the evaluation of a life estate subject to defeasement in the event of remarriage. They said,

"However, the credit is in no event to exceed the lesser of the amount of the life estate valued as of the date of election and the sums actually received prior to remarriage. This rule will give effect to the intent of Congress that there be a credit for the consideration, and will at the same time limit the credit to the maximum valuation possible as of the date of transfer". [footnote omitted]

It is to be noted, however, that this bow in the direction of totalling income worked to the disadvantage, and not the advantage, of the estate which sought the credit; the credit was restricted to the lesser of the total received, on the one hand, and the value on the transfer date, on the other. We are not at all certain that this alternative approach has a basis in the statute and we here express no agreement or disagreement with it. In any event, it affords no comfort to the estate in the case before us.

15. We do not regard Nourse v. Riddle, supra, 143 F.Supp. 759 (S.D.Cal. 1956), as authority for totalling income in measuring consideration received within the meaning of § 2043(a). That case is one concerned with the initial question whether the consideration for the decedent's inter vivos transfer was adequate and full, rather than with the secondary question, present here, as to the proper measure of what concededly is an insufficient consideration. At the time of the opposing transfers the value of the property Mrs. Nourse gave up was in excess of $164,000 and the value of the property opposingly transferred, and as to which she received a life estate, was in excess of $283,000. The factual contrast with the instant case is at once apparent. The court concluded that what the decedent received was greater than what she transferred and thus that there was adequate and full consideration for her transfer. In doing so, the court took into account the fact that the decedent outlived her expectancy under the tables then used by the Internal Revenue Service. While hindsight was employed, to the extent of recognizing the actual length of the decedent's life after the transfer, there was no income totalling as such. Any implication to be drawn from the case may well be circumscribed, in any event, by the Ninth Circuit's later flat statement in United States v. Past, supra, p. 14 of 347 F.2d, that consideration is to be valued at the time of the transfer. We may accept Nourse's ultimate result but we are not persuaded that it stands for income totalling. See Estate of Lillian B. Gregory, supra, p. 1020 of 39 T.C.; In re Stevens' Estate, supra, p. 342 of 329 P.2d.

We thus conclude that the district court erred in equating "consideration received" by Edna with the total dollars paid her from the trust during her remaining life on the 158 shares transferred by the nephews.

B. This conclusion, however, does not mean that we hold that the $35,773.16 valuation figure proffered by the government is necessarily the proper one. It may be proper and it may not be proper.

We are aware, as the parties are, of the tables provided by the regulations for the valuation of life estates. Treas. Regs. § 20.2031–7(c) and (f); Treas.

Regs. 105, § 81.10(i). We do not understand that the parties here are in disagreement as to the use or non-use of mortality tables, once the income totalling approach is discarded. We see nothing in this record which bears one way or the other on whether the decedent in 1950 could reasonably be expected to outlive or underlive her normal life expectancy. But, as the government in its brief concedes, mortality tables are not necessarily determinative. Although the tables ordinarily are to be accepted, United States v. Past, supra, footnote 3, p. 13 of 347 F.2d; Estate of Irma E. Green, 22 T.C. 728, 732 (1954), they are evidentiary and other factors may control. Hall v. United States, 353 F.2d 500 (7 Cir. 1965); Estate of John Halliday Denbigh, 7 T.C. 387, 389 (1946); Huntington Nat'l Bank, 13 T.C. 760, 772 (1949). See Estate of Lillian B. Gregory, supra, p. 1021 of 39 T.C.

Value, after all, is a question of fact and not of formula. Hamm v. Commissioner, 325 F.2d 934, 938 (8 Cir. 1963), cert. denied 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046; Estate of Goodall v. Commissioner of Internal Revenue, 391 F.2d 775, 786 (8 Cir. 1968). We are not advised as to the 1950 per share valuation employed by the Internal Revenue Service which, with Edna's then age and life expectancy, served to produce the figure of $35,773.16. We do note, for what that notice may be worth, that the dividends on the 158 shares in 1949, the calendar year immediately prior to the transfer, amounted to $41,080; that that solitary year's production exceeded the figure the government proposes for the value of the life estate; and that this contrast and the fact dividends had been paid on the stock during each of the nine immediately preceding years strongly suggest that the government's figure rests upon a valuation per share which is unrealistically low.

The dividend facts of the year 1949, and those of the nine years preceding it are prior and established facts which clearly have some relevance in determining per share basic value in January 1950.

The determination of the amount of "consideration received" by Edna at the time of the 1950 transaction is a matter for the trial court in the first instance. We realize that, in a sense, the parties already have had a day in court, but the choice there was essentially that between the opposing and contrasting respective figures of $229,890 and $35,773.16. The stipulation stated,

"The only issue to be decided under Count I of the Complaint is whether the consideration received by decedent for the transfer of said 316 shares of stock to said trust was $35,773.16 or $229,890.00."

We do not read that recital to mean that only the one stated figure or the other *must* be utilized; we read it to mean that the issue before the district court was so framed and so confined. In the interests of fairness to both sides, and in the thought that it is "just under the circumstances", within the meaning of 28 U.S.C. § 2106, we remand so that the estate may establish, if it is able, that the transfer date value of the 158 shares is greater than the smaller of these figures. See Bolling v. Commissioner, 357 F.2d 3, 10–11 (8 Cir. 1966); United States v. Hall, 393 F.2d 383 (8 Cir. 1968). The estate, of course, has the burden of proof. If that burden is not sustained the smaller figure will control.

In its reply brief here the government asserts that if we remand, "evenhandedness would require that the Government, on remand, be relieved of its stipulation as to the value of the 316 shares". We regard that stipulation, in contrast to the one as to the two figures, as flat and decisive. It reads, "The fair market value of said 316 shares of stock one year after the decedent's death was $379,200". We are not free to disregard it. Farmers Co-op. Elevator Ass'n v. Strand, 382 F.2d 224, 231 (8 Cir. 1967), cert. denied 389 U.S. 1014, 88 S.Ct. 589,

19 L.Ed.2d 659. The value of the shares so stipulated for the optional valuation date may well be, of course, although twelve years later, another factor for the district court to consider in its determination of value of like shares on January 18, 1950.

That portion of the district court's judgment embraced in paragraph I thereof and relating to federal estate tax is vacated and the case is remanded for further proceedings consistent with this opinion. Only half of the cost incurred by the United States for printing the record may be taxed.