HELVERING, Com'r of Internal Revenue, v. UNITED STATES TRUST CO. et al.

No. 266.

Circuit Court of Appeals, Second Circuit.
April 29, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for petitioner.

Harry J. Ahlheim and Reeves, Todd, Ely & Biaty, all of New York City (Harry J. Ahlheim, and Ambrose G. Todd, both of New York City, of counsel), for respondents.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The question in this case is whether any part of a trust fund, set up by the testator during his life, shall be included as part of his gross estate under section 302 (d) of the Revenue Act of 1926, 26 U.S.C.A.Int. Rev.Acts, page 228. He had become estranged from his wife some years before he died, and in contemplation of a divorce which followed within a few months, he made an agreement with her on January 31, 1929, by which he agreed to pay her $2,500 a month during her life, out of which she was to support herself without further recourse to him, and in addition to "support and maintain her daughter during the time the said daughter resides with her". The child was to spend half her time with her father and half with her mother, and the testator agreed to assume certain of her expenses while she was with her mother. The agreement also provided that the testator might at any time commute the annuity by setting up a trust for $425,000, the income from which was to be paid to his wife for life, and which she should accept in satisfaction of any claims against him under the agreement. The parties were divorced in May, 1929, by a decree which ratified the provisions made for the wife and child, subject however to later modification as to the child.

In the following June the testator exercised his option to discharge his obligations by setting up a trust, and transferred to two trustees securities, valued at about $414,000, the income from which was to be paid to the wife for life; she to have also a power to appoint $200,000 of the principal by will. He reserved a joint power in himself and his wife at any time to revoke the trust, in which event the property should pass as he and she directed. He died in May, 1935, and the taxpayers are his executors. The Commissioner included the corpus of the trust in the gross estate because it fell within section 302(d) of the Act of 1926, not having been made for a consideration in "money or money's worth". The Board on the other hand excluded it on the ground that the release by the wife was such a consideration, and was of greater value than the whole trust fund.

We decided in Meyer v. Helvering, 2 Cir., 110 F.2d 367, that such payments as the testator promised to make by the agreement of January, 1929, were not deductible from his gross estate. Our reason was that, although the wife's release of her right to alimony during their joint lives was a consideration "in money or money's worth" under section 303(a) (1) of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev. Acts, page 232, it was also a "relinquishment * * * of * * * marital rights in the decedent's property or estate" under section 804 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 642. The wife's annuity under the agreement was itself as much a "marital right in the decedent's property or estate", as the claim which it superseded, and the trust, set up in consideration of the "relinquishment" of the annuity, was therefore within section 302(d) of the Act of 1926, as amended by section 804 of the Act of 1932. The taxpayers answer that in 1929, when the trust was set up, section 302(d) of the Act of 1926 did not exclude from the phrase, "money's worth", the release of a "marital right"; that the definitory amendment, being introduced by section 804 of the Act of 1932, ought not to be construed retroactively; and that if it be, it is unconstitutional. There can be no doubt that as matter of mere interpretation this argument is wrong. Section 302(d) first applied to the testator's estate at all only when he died in 1935; not until then did it command the Commissioner to include the trust in the gross estate; and before 1935 section 804

of the Act of 1932 had given it its new meaning. Whether it was constitutional to include within the section so amended a trust set up in 1929 is another matter, and depends upon the extent to which the result disappoints reasonable expectations. Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Helvering v. Helmholz, 296 U.S. 93, 98, 56 S.Ct. 68, 80 L.Ed. 76; Frew v. Bowers, 2 Cir., 12 F.2d 625, 630; Commissioner v. Flanders, 2 Cir., 111 F.2d 117. The argument must be that in effect the testator had assurance, when he set up the trust, that it would not be included in his gross estate; and that this assurance was because in 1929 section 302(d) did not cover trusts set up in exchange for a release of such claims as the wife's annuity. The situation must be distinguished from one in which the testator had actually received property in exchange for a trust. To change the law retroactively so as to tax both the trust fund and the property so received might present a constitutional question; and it is true that, viewed from the legatees' point of view, the cancellation of a valid claim against the estate is the same as the receipt of property. Constitutionally, however, the two situations are different. Although the wife's annuity was deductible from the gross estate in 1929, the testator had no vested right in that privilege; Congress may at pleasure change the deductions which it allows, regardless of when the claims have arisen. The same property passes in any event, and the question is merely as to who gets it; debts are not liens. If therefore the agreement of January, 1929, had remained in force, the annuity would not have been deductible. It was therefore constitutional to include the trust by means of which the testator secured its release, and thus to prevent the estate from profiting by the mere form which the transaction happened to take.

■ It does not, however, follow that the whole trust fund should be included in the gross estate, and we think that it should not. It was given in consideration of a release of the wife's annuity which was clearly "money's worth"; but, as we have seen, that annuity had been given in consideration of the wife's release of her marital right of support and was itself a marital right, so that its release was not a valid consideration for the trust under section 804 of the Act of 1932. However, the annuity was also in part given in consideration of the wife's promise to support the child while she lived with her, and, pro tanto, that was not in release of any marital right. Strictly, of course, the wife could not release the testator at all from his duty to support the child; she could only agree to relieve him of it, and for this reason the annuity would not pro tanto be within section 804 of the Act of 1932, on any theory. But, even though her promise were to be regarded as a release of the testator's duty to support the child, that duty was not a marital right in his estate. Hence this much of the annuity was not given to secure the release of such a right; and a fortiori the trust, so far as it was set up in consideration of a release of that part of the annuity, was not set up in consideration of the release of a marital right, and was not includable in the gross estate.

It does not certainly appear in the record how far the parties allocated the annuity to the wife's support, and how far to the child's. The agreement itself says nothing about it, but the stipulation on which the case was tried declares that it was "established and fixed by agreement of the parties that of the said sum of $2,500 it was contemplated that approximately one-third thereof should be allocated and devoted to the support and maintenance of the daughter during her minority". That is hardly more than a statement that the parties expected that the daughter's expenses would be about $833.33 a month, while she lived with her mother. However, we cannot see that it makes any difference, other than one of the merest form, whether the wife's agreement was to support the child, whatever it cost, in exchange for the testator's promise to pay her $833.33 a month, and to support herself in exchange for a promise to pay her $1,666.66 a month; or whether she agreed to support both in exchange for a promise to pay her $2,500 a month. If the agreement took the first form the bargain would nevertheless have to be scrutinized to see whether $833.33 was more or less than a "full and adequate" consideration, and only so far as it was would the annuity be recognized as made for "money's worth". In either view the only relevant fact is what was the cost of the child's support; so far as the annuity paid for it, the annuity was given for "money's worth"; and so far as the trust fund was given to release that much of the annuity, it should not be included in the gross estate.

The Board has not found what was the prospective yearly cost of the child's sup-

port when the trust was set up on June 12, 1929, and we cannot dispose of the case without it. When upon remand that cost is found, the value of that part of the annuity which represents it, can also be found; it will be the value of an annuity of that amount for the three joint lives of the testator, the wife and the child, subject to termination in any case upon the child's majority. When the Board has found that value it will find what proportion it represented of the value of the trust fund when it was set up on June 12, 1929. The tax will be then computed by excluding from the gross estate that proportion, but only that proportion, of the value of the trust fund when the testator died.

Order reversed; cause remanded.