ESTATE OF HOWARD LEE DAVIS, DECEASED, IONE DAVIS JONES, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5859–66. Filed November 21, 1968.

---

*Martin D. Cohen*, for the petitioner.
*Owen A. Knopping*, for the respondent.

FEATHERSON, *Judge:* Respondent determined a deficiency in the estate tax of petitioner in the amount of $22,231.30. The sole issue is what portion, if any, of an inter vivos trust set up for the benefit of the former wife of decedent is includable in his gross estate.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation and exhibits thereto are incorporated herein by this reference.

Howard Lee Davis (sometimes hereinafter referred to as decedent) died testate, a resident of Upper Montclair, N.J., on May 9, 1963. Ione Davis Jones (hereinafter referred to as Jones), decedent's daughter, duly qualified as executrix of his estate on June 5, 1963. At the time of filing of the petition in this case, her legal residence was in Montclair, N.J. The estate tax return for the estate of decedent was filed with the district director of internal revenue at Newark, N.J., on August 10, 1964.

On October 1, 1902, decedent married Ione Tefft Hatch (hereinafter referred to as Ione). Decedent and Ione had three daughters, Mary Davis Conger (hereinafter referred to as Mary) born September 25, 1903; Alma Ruth Davis (hereinafter referred to as Alma) born February 14, 1906, and Ione Davis Jones (Jones) born April 13, 1910.

Decedent was graduated from the Sheffield Scientific School of Yale University in 1899, where he received a bachelor's degree in engineering. In 1906, he became employed in the engineering department of the New York Telephone Co. On January 1, 1926, decedent was appointed director of Technical Employment and Training by New York Telephone Co., a position which he held until retirement on December 31, 1938, at age 61.

Decedent's salary from New York Telephone Co. ranged from $9,000 per year in 1925 to $11,000 per year in 1938. Upon retirement, decedent received a pension which ranged in amount from $318.09 per month in 1939 to $314.55 per month in 1959. Decedent continued to receive the pension until his death. After retirement decedent be-

came a teacher at the Polytechnic Institute of Brooklyn, where he taught until 1947. His salary there was approximately $5,000 to $6,000 per year. After 1947, he taught part time at Newark College of Engineering until about 1952.

Decedent was the author of two publications; one, a book written in 1931 entitled "The Young Man in Business," was published in New York by John Wiley & Sons, Inc., and in London by Chapman & Hall, Ltd., and the other, a pamphlet entitled "Preparation for Seeking Employment," was published by John Wiley & Sons., Inc., in 1937. Decedent received some royalty income from these publications but the record does not disclose the amount thereof.

Decedent and Ione maintained a high standard of living during their marriage. In 1910, they purchased in Ione's name a 13-room, one-family residence in Montclair, N.J., in which they resided until it was sold on March 31, 1936. The house had four bathrooms, three porches, and a large cellar, in addition to its 13 rooms, and was located in a good residential neighborhood. The grounds included a garden and grape arbor. Decedent always employed full-time domestic help, as well as a part-time laundress. From time to time decedent also engaged governesses for his daughters.

Each of decedent's daughters received a college education, the costs of which were paid by decedent. Decedent also paid the costs of educating a nephew at Yale University. As graduation presents, decedent gave each daughter an extended European vacation.

In 1932, Alma contracted tuberculosis and was treated at Saranac Lake, N.Y. While Alma was away from home receiving treatment, marital difficulties arose between decedent and Ione, and in the fall of 1935 they agreed to break up their home.

Following a decision to divorce, extended discussions were held between decedent and Ione, some of which were held in the presence of decedent's daughters (including Alma who returned home in early 1936), relating to the amount of support Ione would need after the divorce. It was agreed that Ione would require $300 per month for her support. It was also agreed that Alma would live with her mother in New York City.

On March 31, 1936, the house in Montclair, N.J., was sold in contemplation of the divorce. Decedent and Ione owned no other real estate, and none was acquired prior to their divorce.

On April 17, 1936, decedent and Ione met in an attorney's office in New York City and executed two documents, one entitled "Articles of Separation" (hereinafter referred to as separation agreement), and the other entitled "Deed of Trust" (hereinafter referred to as trust). Both documents were witnessed by Walter A. Peterson and Charles B. Hill, and were acknowledged by Warren S. Adams II, a notary

public, on April 17, 1936. At the time these documents were executed decedent was 58 years old, Ione was 54 years old, and all the children were over 25 years of age.

The separation agreement, after stating that the purpose of the agreement is to confirm the separation and to make adequate provision for the support and maintenance of the wife, provided in material part, as follows:

SECOND: The husband shall and will pay to the wife during his lifetime or until such time as this agreement shall terminate, for her support, sustenance and maintenance, and for her sole and separate use and benefit, the sum of Two thousand and forty dollars per annum, in equal monthly installments of $170.00 each, commencing on the 4th day of July, 1936, and payable on or about the 4th day of each and every month thereafter.

THIRD: The parties hereto, each for himself and herself hereby specifically waives [sic] the right of election to take his or her share of the estate of the other as in intestacy, given to him and her by the Decedent Estate Law of the State of New York, in effect September 1, 1930, or any right of election given by the Statutes of any other State, and each agrees that the other may freely devise and bequeath any part or all of his or her estate by any will or codicil to any will heretofore executed, or which may hereafter be executed by him or her, to such person or persons as he or she may wish; and each of the parties hereto agrees not to seek any right of election in the estate of the other given to him and to her by law.

FOURTH: The wife agrees, in the event of the death of the husband, not to exercise nor to seek to exercise ant [sic] right of dower in any real estate owned by the husband at the time of his death.

\* \* \* \* \* \* \*

SEVENTH: In case the parties hereto are divorced by a court of competent jurisdiction, no provisions for alimony to the wife shall be made in the decree to be entered therein, but this agreement shall survive said divorce and shall continue in full force and effect. If the wife thereafter marries, then and thenceforth from the time of such remarriage the payments provided for herein shall cease and terminate, but without prejudice to any act or thing done or right accrued up to the time of such remarriage.

The second of these contemporaneous documents, the trust, was signed by both decedent and Ione, and conveyed certain stocks and securities, with an aggregate value on the date of transfer of $26,307.38, to Commercial Trust Co. of New Jersey as trustee. Commercial Trust Co. of New Jersey continued to serve as trustee up to the time of trial. The trust provided in material part, as follows:

SECTION I

GENERAL PURPOSES

\* \* \* \* \* \* \*

(e) To pay the entire net income of the trust property to Ione Hatch Davis, the Wife, for and during the term of her natural life, and upon her death to pay the entire net income to Alma Ruth Davis, daughter of the Settlor, and in the event that said Alma Ruth Davis be then married or deceased, to pay said entire net income to the Settlor. \* \* \*

\* \* \* \* \* \* \*

## SECTION VII

### TERMINATION OF THE TRUST

This trust may be terminated during the joint lives of the Settlor and the Wife, by a written agreement to that effect, signed by them and delivered to the Trustee. In the event of the termination of the trust by such an agreement, the Trustee shall pay over and deliver the property then contained in said trust fund as agreed upon by the Settlor and the Wife in such agreement terminating the trust. The Settlor reserves the right at any time during the period of this trust to direct the Trustee to pay over all or any part of the trust fund to the Wife, and in the event of such direction the Trustee shall pay over and deliver to the Wife so much of or all of the trust as directed, free from the trust. And in the event of the death of the Settlor, or in the event that he shall have been adjudged a mental incompetent, the Trustee shall pay over all or any part of the trust fund to the Wife on the written request of the Wife and of all of her daughters then living. This trust shall terminate in any event upon the death of the survivor of the Settlor and the Wife, and the Trustee shall then pay over and deliver the property constituting the corpus of the trust to Mary Sargent Davis Conger, Alma Ruth Davis, and Ione Tefft Davis Jones, daughters of the Settlor and the Wife, or to the survivors thereof, in equal shares, except that if any of said daughters shall leave issue her surviving, the said issue shall take the share of the daughter so pre-deceasing the survivor of the Settlor and the Wife, per stirpes and not per capita.

## SECTION VIII

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The Settlor shall also have the right, by an instrument in writing delivered to the Trustee, at any time and from time to time during the life of the trust and in the event of the death of the Settlor, the Wife and any two daughters of the Settlor and the Wife shall have the right, to alter or modify the terms of the trust hereby established; provided, however, that no such alteration or modification shall deprive the Wife and/or Alma Ruth Davis of her right to receive income; \* \* \*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

In the event that the Settlor shall die before the termination of this trust and the Wife shall have been adjudged a mental incompetent, or in the event that both the Settlor and the Wife shall have been adjudged mental incompetents, the Trustee shall have the right in its sole and uncontrolled discretion to use all or any part of the principal of this trust for the support, maintenance and confort [sic] of the Wife, and the Trustee is specifically charged by the Settlor to see that the Wife receives every care and comfort during the period of her mental incompetency.

## SECTION IX

### LAWS OF NEW JERSEY TO GOVERN

The trust hereby established shall be deemed a New Jersey Trust and shall in all respects be governed by the laws of the State of New Jersey, and the situs of the trust shall be at all times in the State of New Jersey.

At the time the separation agreement and trust were executed decedent and Ione were residents of the State of New Jersey and had been for many years.

Shortly after April 17, 1936, Ione went to Reno, Nev., and there instituted divorce proceedings against decedent. These proceedings culminated in the issuance, on June 4, 1936, of an "absolute and final decree of divorce" by the Second Judicial District Court of the State of Nevada. The divorce decree ratified and confirmed the separation agreement and made no other provision for support and property rights of Ione. The divorce decree did not refer to the trust.

Until his death, decedent faithfully paid to Ione $170 per month as provided for in the separation agreement. Ione also received monthly payments from the trust beginning on July 15, 1936, and continuing after decedent's death. The payments to Ione under the trust constituted all the trust income. The monthly payments varied in amount and as of May 9, 1963, the date of decedent's death, Ione had received a total of $44,803.12 from the trust.

After the divorce Ione and Alma resided in a New York City hotel. At first Alma was unable to work full time because of her health, although she did work part time. Decedent gave Alma $50 per month to help support her. In 1940, Alma became gainfully employed on a full-time basis and the payments from decedent ceased. Ione's sole income after the divorce was derived from the $170 monthly payments under the separation agreement and the net income from the trust.

Neither Ione nor Alma married after Ione's divorce, and they have continued to live together. Decedent subsequently married Ethel Juliette Davis, but she died on February 7, 1960. Decedent did not remarry after his second wife's death.

At the time of trial Ione, who was then 85 years of age, was bedridden from a serious stroke and was physically incapable of appearing and testifying in court.

At the date of decedent's death the value of the assets in the trust was $93,411.25. Petitioner excluded the entire value of the trust from the gross estate. Respondent determined in his notice of deficiency that the entire value of the trust at the date of death was includable in the gross estate under sections 2036 and 2038, I.R.C. 1954.[1]

## ULTIMATE FINDINGS OF FACT

The separation agreement and trust were integrated parts of a larger agreement between decedent and Ione which culminated in divorce, the purpose and effect of which was to settle out of court and by agreement the provisions decedent was to make for Ione's support. The trust created for Ione, as well as the $170 monthly payments under the separation agreement, were in consideration of her relinquishing her right of support.

---

[1] All references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

The value of Ione's support right, at the time of the divorce, was $300 per month. The commuted value of her support right over and above the $170 per month payable under the separation agreement (i.e., $130 per month) was $17,150.35 as of the date of the divorce. Decedent's transfer of $26,307.38 to the trust was not supported by adequate and full consideration within the meaning of sections 2036 and 2038.

OPINION

This case involves the interaction of Code sections 2036, 2038, and 2043, as applied to a transfer in trust by the decedent in April 1936, immediately prior to his divorce. Under section 2036(a) (1) and (2),[2] a decedent's gross estate includes the value of any property he has transferred in which he retains the right, either alone or in conjunction with any other person, to designate the persons who shall possess or enjoy the property or the income therefrom unless the transfer was for "adequate and full consideration in money or money's worth." Section 2038(a)(2) [3] requires the inclusion in the gross estate of all property over the enjoyment of which the decedent held a power to alter or amend (alone or in conjunction with any other person), unless he transferred the property for "adequate and full consideration in money or money's worth." Section 2043(a) [4] provides that, if a transfer falling within section 2036, 2038, or certain other sections is made for "a consideration in money or money's worth" but not "adequate and full consideration," there shall be included in the gross estate "only the ex-

---

[2] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

[3] SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

 *     *     *     *     *     *     *

(2) TRANSFERS ON OR BEFORE JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. * * *

[4] SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION.

(a) IN GENERAL.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 and 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

cess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent."

In the notice of deficiency, respondent determined that the full fair market value of the trust assets at the time of decedent's death in 1963, $93,411.25, was includable in decedent's gross estate under sections 2036 and 2038. Respondent now contends, in the alternative, that if we should find that the trust was created in consideration of the wife's reliquinshment of support rights, only a fraction of the property placed in the trust was transferred for consideration, and that section 2043(a) would include the balance in decedent's estate.

Petitioner concedes that the powers and interests retained by decedent in the trust are sufficient to bring it within the language of sections 2036 and 2038, absent the exception in each section for transfers for adequate and full consideration. Petitioner contends, however, that the entire transfer in trust was supported by "adequate and full consideration" and that, therefore, no part of the trust is includable in decedent's estate. In the alternative, petitioner contends that only a portion of the trust is includable in decedent's estate, and advocates a method of valuation differing significantly from respondent's valuation under section 2043(a).

The first problem is whether the trust in fact was created as part of the support arrangement. Respondent contends that the separation agreement represented the entire divorce settlement. We believe, however, that the record as a whole clearly supports our finding that the separation agreement and trust were created as parts of the same "transaction" whereby decedent and his wife, Ione, settled claims arising from the marriage in anticipation of a subsequent divorce. We have made this finding, notwithstanding the facts that the separation agreement and the trust do not refer to each other, and the divorce decree does not mention the trust.

The record shows that in late 1935 decedent and Ione decided, after more than 30 years of marriage, to become divorced. Once this decision was made, family discussions were held concerning what provision was to be made for Ione. The family, including decedent, decided that Ione should have $300 per month for her support. As a result of these discussions, described in great detail by credible testimony, the family home was sold on March 31, 1936. Thereafter on April 17, 1936, decedent and Ione met at the office of an attorney in New York City where the trust and separation agreement were signed by both Ione and decedent. Both instruments were notarized and witnessed by the same persons. Subsequently Ione instituted a divorce action in Nevada and obtained a final divorce on June 4, 1936. The separation agreement, calling for payments of only $170 per

month, was obviously insufficient, standing alone, to provide the needed support. These facts, together with the evidence of decedent's earnings before and after divorce, the standard of living of the parties, and Ione's lack of earning capacity and financial resources, convince us that the trust and separation agreement together—not the separation agreement alone—were intended to provide for Ione's support.

The divorce decree's failure to mention the trust, in contrast to its specific inclusion of the separation agreement, does not, in our view, militate against our finding that the two instruments constituted parts of the same transaction. Separation agreements are frequently incorporated in divorce decrees as a means of protecting their viability. There may have been several reasons why the trust was not so incorporated. The decedent and Ione may have felt that the flexibility provided by the trust, which was subject to amendment and was to be governed by New Jersey law, might have been seriously impaired had the trust been incorporated in the Nevada divorce decree.

We reject respondent's contention that the income interests in the trust were created solely for the support and benefit of Alma, decedent's daughter. The provisions of the trust place no restriction upon the use of the income by Ione, and they give Alma, then 30 years of age, no rights in the income until Ione's death. True, Alma was then recovering from tuberculosis, but she lived with Ione, and decedent gave Alma $50 per month for her support until 1940 when she became gainfully employed on a full-time basis.

The second question is whether the interests or rights relinquished by Ione in exchange for the trust and support agreement were the kind of interests or rights that constitute "consideration" within the meaning of sections 2036 and 2038. More specifically, were they the type of marital rights to which section 2043(b) [5] applies?

Decedent and his wife were domiciled in the State of New Jersey at the time the trust and separation agreement were negotiated and executed, and had been domiciliaries thereof for many years. Under the law of New Jersey, as it existed on April 17, 1936, only three rights of monetary value could accrue to a wife by reason of marriage: (1) The right to receive adequate support from her husband, N.J. Stat. Ann. sec. 2A:34–23 and –24 (1952); (2) the statutory right of dower (in New Jersey an inchoate right to a one-half life interest in realty owned by the husband during marriage), N.J. Stat. Ann. sec. 3A:35–1 (1952); and (3) the statutory right of quarantine (in

---

[5] SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION.,

(b) MARTIAL RIGHTS NOT TREATED AS CONSIDERATION.—For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

New Jersey the right to remain in the deceased husband's "mansion house" without paying rent until dower is assigned), N.J. Stat. Ann. sec. 3A:35-4 (1952). There was no right in New Jersey to any other statutory share of the deceased husband's estate. The only election granted a widow was the right to claim dower in lieu of a testamentary bequest of lesser value, N.J. Stat. Ann. sec. 3A:37-1 (1952). The statutory rights of dower and quarantine could only come into existence if the husband owned real property during marriage and prior to divorce, in which the wife had not released her right of dower by deed. *Block* v. *P. & G. Realty Co.*, 96 N.J. Eq. 159, 124 Atl. 372 (1924); *In re Flasch*, 51 N.J. Super. 1, 143 A. 2d 208 (1958).

Although the separation agreement contained provisions relating to the relinquishment of dower and other statutory rights, no such rights existed at the time the trust and separation agreement were executed. At that time decedent and Ione had already sold their residence and decedent did not own any other real estate. Nor did he acquire any prior to the divorce. There was nothing to which the rights of dower and quarantine could attach. Ione did not, therefore, receive any consideration for the purported relinquishment of these rights. Thus, under New Jersey law as it existed in 1936, the only right that Ione relinquished was her right to support, a present claim against decedent not within the ambit of section 2043(b). Cf. *Estate of Hubert Keller*, 44 T.C. 851 (1965).

Having determined that the interest relinquished by Ione was the type of interest which may constitute "consideration" under sections 2036 and 2038, we must now determine whether it was "adequate and full consideration." Petitioner contends that the consideration was "adequate and full," and that, consequently, no part of the value of the trust is includable in decedent's gross estate, relying on the argument that the value of the right relinquished by Ione (her support rights) may be presumed to be the value of what she received in exchange (the rights under both the separation agreement and the trust). Cf. *United States* v. *Davis*, 370 U.S. 65 (1962). Respondent contends that the value of Ione's right to support did not exceed $170 per month, the amount she was to receive under the separation agreement, and, for this reason, the full value of the trust estate is includable in decedent's gross estate.

We do not completely agree with either party on this point. The evidence clearly indicates that Ione would not have been able to maintain her accustomed standard of living on $170 per month, and that decedent's financial position, detailed in our findings, was sufficient to enable him to pay a great deal more. We do not believe that either party to the divorce considered the separation agreement the sole provision for her support or that Ione would have agreed to settle her

claim to support for $170 per month. The evidence establishes that decedent, his wife, and his mature children engaged in open, candid discussions as to what would comprise adequate support for Ione. At the time of trial, neither Ione, nor, of course, decedent, could testify as to what amount was determined as proper. However, two of their daughters testified that it was agreed by all concerned that $300 per month was appropriate. Of this amount, $170 per month was to come from the separation agreement and the balance from the trust.

We found the testimony of the two daughters to be clear and straightforward. It was based on firm memory at the time of trial, and a realistic knowledge of Ione's needs and circumstances at the time of the divorce. The total amount of $300 per month is reasonable in light of the family's standard of living and decedent's finances, and we believe that the divorce courts of New Jersey would have found this to be a proper amount. We are convinced that the agreement reached by the parties, distilled from the negotiations preceding the divorce, more accurately reflects the value of Ione's support rights than either the separation agreement alone or the expert testimony offered by petitioner as to what the New Jersey courts would have likely awarded Ione had she litigated the matter.[6]

The parties have stipulated that the present value of an annuity of $1 per annum payable at the end of each year to a woman aged 54, just divorced, for her life or until remarriage, using a 4-percent interest factor (the factor used in 1936) is 10.7973. To obtain the value of the right to receive monthly payments, the resulting figure is multiplied by 1.01820. See sec. 81.10(i)(6), Regs. 105. In the present case, Ione's support rights had a value of $130 monthly, in addition to the $170 provided under the support agreement. The value of this right (which was, in fact, the consideration for the trust) is $130 × 12 × 10.7973 × 1.0182, or $17,150.35. It follows that decedent's transfer of securities valued at $26,307.38 as of the date of transfer was not for "adequate and full consideration," since he could have satisfied his agreed support obligation by the purchase or other creation of an annuity for a lesser amount.

We are left, then, to a consideration of the mechanics of section 2043(a), quoted in footnote 4, *supra*. The problem lies in the interpretation of the last clause, i.e., "the value of the consideration received therefor by the decedent." Respondent contends that section 2043(a) requires only a simple subtraction of the value of Ione's life interest

---

[6] Petitioner offered the testimony of an expert on New Jersey domestic relations law that, in his opinion, $400 per month would have been awarded Ione if she had litigated the matter. The factors relied on by the expert, however, would not, we believe, have required a larger award than $300 per month, particularly when considered in the light of the negotiations within the family.

in the trust (computed to be $11,361.89)[7] from the fair market value of the trust assets on the date of decedent's death ($93,411.25). Respondent would have us reach this conclusion on the theory that the value of Ione's life interest in the trust is either equal in fact or presumed to be equal to what decedent received in exchange for creation of the trust, i.e., release of Ione's support rights in excess of $170 per month. Cf. *United States* v. *Davis, supra.* Respondent argues that this approach leads to the most reliable valuation of the "consideration received" for the trust. Petitioner contends, on the other hand, that under section 2043(a) the amount included in the gross estate should be calculated by taking the ratio of the amount of the consideration received by decedent ($17,150.35, under our findings) to the value of the total assets transferred, both valued at the time of the transfer ($17,150.35/$26,307.38), and applying that ratio to the value of the trust at decedent's death ($93,411.25).

In our analysis of the problem under sections 2036 and 2038, we found that the commuted value of the support rights released by Ione was $17,150.35. This amount was thus also the "consideration received" by decedent within the meaning of section 2043(a). True, this sum exceeds the value of a life estate for Ione in assets worth $26,307.38 as of April 17, 1936, as computed by respondent. But Ione's rights under the trust cannot be accurately and fully valued by reference to actuarial tables. Cf. *United States* v. *Righter*, 400 F. 2d 344 (C.A. 8, 1968). Under section VII of the trust she acquired a variety of potential benefits: (1) Ione and decedent by mutual agreement could terminate the trust and divide the fund; (2) decedent reserved the right to direct the trustee to pay over to Ione all or any part of the trust fund free of the trust; and (3) upon decedent's death or an adjudication that he was mentally incompetent, Ione was given the right to request and receive the entire corpus free of the trust provided that each of the three daughters of decedent and Ione, then living, joined in the request. While these rights of Ione were subject to the exercise of the will of others, they add potential value to her interest in the trust and indicate that an actuarial computation based on life estate tables would not be a reliable guide to the value of what was transferred by decedent.[8]

We are constrained to agree with respondent, however, that section 2043(a) requires a simple subtraction of the value of the consideration

---

[7] It is stipulated that the present right to receive the income from $1 at the end of each year until the death or prior remarriage of a woman, aged 54, just divorced, is $0.43189. Respondent arrives at this value of $11,361.89 by applying the factor (0.43189) to the agreed value of the trust assets on Apr. 17, 1936 ($26,307.38). Petitioner points out that Ione's trust interest was not affected by remarriage and that, therefore, the factor which should be used under respondent's theory is 0.47157. Sec. 20.2031–7(b), table I, col. 3, Estate Tax Regs.

[8] In view of these and other rights in Ione cutting across the entire trust res, we do not consider the "fragmented approach" enunciated in *Estate of Donald M. Nelson,* 47 T.C. 279 (1966), remanded 396 F. 2d 519 (C.A. 2, 1968).

received as of the transfer date from the value of the trust assets as of decedent's death. Under this interpretation, we recognize that all market appreciation or depreciation following the transfer is reflected in the gross estate. This may produce harsh results either to the estate or to the Treasury in given factual situations. See dissent in *United States* v. *Past,* 347 F. 2d 7, 15–18 (C.A. 9, 1965) ; *Helvering* v. *United States Trust Co.,* 111 F. 2d 576, 579 (C.A. 2, 1940), certiorari denied 311 U.S. 678 (1940), reversing 39 B.T.A. 783 (1939). However, the difficulty with petitioner's argument lies in the language of section 2043(a). The section uses the term, "consideration received," and this seems clearly to refer to the consideration received by the transferor-decedent as of the date of the transfer. Cf. *United States* v. *Righter, supra;* [9] *United States* v. *Past, supra* at 14 fn. 6; *Vardell's Estate* v. *Commissioner,* 307 F. 2d 688, 693 (C.A. 5, 1962), reversing on other grounds 35 T.C. 50 (1960) ; *Estate of Lillian B. Gregory,* 39 T.C. 1012, 1020–1022 (1963) ; *D. G. McDonald Trust,* 19 T.C. 672, 690 (1953), affirmed sub nom. *Chase National Bank* v. *Commissioner,* 225 F. 2d 621 (C.A. 8, 1955), certiorari denied 350 U.S. 965 (1956). Moreover, if there is any doubt as to the meaning of the statutory language, such doubt is resolved by section 20.2043–1(a), Estate Tax Regs.,[10] which interprets "consideration received" to mean "price received by the decedent." This reference to "price received" plainly directs attention to the value of the consideration at the transfer date rather than its appreciated or depreciated value as of the date of decedent's death. Taking into account the administrative difficulties inherent in applying the rule advocated by petitioner as well as the language of section 2043(a), the regulation is a reasonable implementation of the statute which must be sustained. Cf. *Commissioner* v. *South Texas Lumber Co.,* 333 U.S. 496, 501 (1948).

[9] In adopting the rule that the consideration received is to be valued as of the transfer date, the court in *Righter* commented at page 348 :

"3. Admittedly, the use of the transfer date for evaluating the consideration and the use of the death or optional valuation date for evaluating the includable property may produce, on occasion, a strange or curious result. This may happen when the consideration property is a fee interest, is retained, and substantially changes in value between the transfer date and the estate tax valuation date. The dissent in United States v. Past, supra, p. 17 of 347 F. 2d, noted this and there suggested a resolution of the problem by the use of value ratios. See, also, the closing sentence of Judge Learned Hand's opinion in Helvering v. United States Trust Co., supra, p. 579 of 111 F. 2d. But the facts may cut either way. The difficulty, if there be one, lies in the statute ; a result of this kind is not unusual in tax law and we are not disturbed by it."

[10] Sec. 20.2043–1 Transfers for insufficient consideration.

(a) *In general.* The transfers, trusts, interests, rights or powers enumerated and described in sections 2035 through 2038 and section 2041 are not subject to the Federal estate tax if made, created, exercised, or relinquished in a transaction which constituted a bona fide sale for an adequate and full consideration in money or money's worth. To constitute a bona fide sale for an adequate and full consideration in money or money's worth, the transfer must have been made in good faith, and the price must have been an adequate and full equivalent reducible to a money value. If the price was less than such a consideration, only the excess of the fair market value of the property (as of the applicable valuation date) over the price received by the decedent is included in ascertaining the value of his gross estate.

Accordingly, we hold that decedent's gross estate should include $76,260.90 ($93,411.25 minus $17,150.35) to reflect decedent's retained interest in the trust.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TANNENWALD, *J.*, concurring: I agree with the majority only because it appears that Ione had such broad supplementary rights beyond her life estate that she was in effect the owner of the entire corpus of the trust. If this were not the case, I would be disposed to fractionalize the trust, both in terms of the interests transferred and the interest retained by the decedent, notwithstanding the contrary view of the Second Circuit Court of Appeals. *Estate of Donald M. Nelson*, 47 T.C. 279 (1966), remanded 396 F. 2d 519 (C.A. 2, 1968). The proportional approach urged by petitioner has considerable appeal but it seems to me that its application is precluded by the language of section 2043(a) and by the decided cases. Neither the passing reference in *Helvering* v. *United States Trust Co.*, 111 F. 2d 576 (C.A. 2, 1940), nor the dissent in *United States* v. *Past*, 347 F. 2d 7, 15–18 (C.A. 9, 1965), articulate sufficient reason for a judicial redirection in favor of this approach. Indeed, the rationale of the dissent herein seems to be founded on fractionalization (which the majority discards on the basis of the facts of this case) rather than on an independent justification of the proportional approach under the language of section 2043(a). Moreover, I note that the proportional approach has found expression in the provision dealing with includability in the gross estate of joint interests in property. Sec. 2040. Since this section antedates section 2043(a),[1] it can be argued that Congress intended that the proportional approach not be used in cases involving less than full and adequate consideration.

---

WITHEY, *J.*, dissenting: In arriving at the conclusion reached here, the majority has first found the value of the trust estate and the value of the right to support which Ione is said to have relinquished, has then compared the two, and arrived at the overage in value of the trust estate which is found to be includable in decedent's estate. I have no quarrel with the method of arriving at the overage but do have difficulty in concluding that any consideration passed from the wife to the husband during his lifetime by virtue of either the trust instrument or the separation agreement which the majority has, rightly I think, found to be a single transaction. Even though the separation

---

[1] The predecessor of sec. 2043(a) first appeared as sec. 302(1) of the Revenue Act of 1926 (44 Stat. 71–72). The predecessor of sec. 2040 originates at least as far back as sec. 402(d) of the Revenue Act of 1921 (42 Stat. 278).

agreement expressly provides that "no provisions for alimony to the wife shall be made *in the decree to be entered*" in the event of a divorce between the parties, the substance of the transaction, as distinguished from its form, does not amount to the relinquishment even partially of the wife's right to support. The provision that the decree shall not mention support money is not dispositive of the question. The very nature of the two agreements, taken together as they must be, not only recognizes the existence and continuance of her right to support, but assures the financing thereof. She has given up nothing which may be held to be consideration under section 2043(a) running to the husband. It follows that the entire trust estate should be included in decedent's estate.

---

HOYT, *J.*, dissenting: I agree with the portion of Judge Withey's dissenting opinion which concludes that the separation agreement here involved does not constitute a relinquishment by the wife of her support rights. A mere specification that in case the parties are later divorced the decree will be silent as to alimony does not constitute a release or relinquishment of support rights in my view. I see nothing else in the documents that could be deemed a release and while the subsequent divorce decree ratified the agreement it was silent as to support rights and did not otherwise purport to settle them. I would therefore hold, as Judge Withey does, that the entire trust corpus should be included in the decedent's estate.

However, if the mentioned provision is construed to be a release or relinquishment of Ione's support rights, I would disagree with the majority opinion in two particular respects.

*First*, I would apply the rule of *United States* v. *Davis*, 370 U.S. 65 (1962), as petitioner urges, and conclude that the value of the rights relinquished by Ione was equal to the value of the transfer made in exchange therefor. As I read our opinions in *Edward B. McLean*, 11 T.C. 543 (1948), and *Estate of Robert Rodger Glen*, 45 T.C. 323 (1966), appeal dismissed by agreement of the parties (C.A. 9, 1968), section 2043(b) is not applicable to the relinquishment of presently enforceable claims in a divorce situation. Here, as the majority opinion indicates, "the only right that Ione relinquished was her right to support, a present claim against decedent's property not within the ambit of section 2043(b)." On the record here, I would hold that the parties valued the alimony and support rights given up by Ione as equal in value to the value of the transfer in trust. Where there is no evidence to the contrary or any suggestion of a donative intention, I would conclude that the values of the two properties exchanged in an arm's-length transaction are either equal in fact or presumed to be equal. *Philadelphia Park Amusement Co.* v.

*United States*, 126 F. Supp. 184, 189 (1954), cited with approval in *United States* v. *Davis, supra; Estate of Morrison T. O'Nan,* 47 T.C. 648, 663 (1967). This is a case in which it is almost impossible to evaluate with any degree of accuracy what was surrendered by Ione or transferred to the trust in exchange for Ione's rights.

The decedent reserved interests in the trust so that it is obvious that the transfer did not consist of the entire trust corpus. After the death of Ione and their ailing daughter, Alma, decedent was entitled to the trust income. Under another provision of the trust if it were terminated by agreement of Ione and decedent, the trust fund was to be divided as they specified and agreed. Decedent thus might have obtained part of the corpus upon an agreed termination. As recognized by the majority opinion these rights and potential benefits add "potential value" to the interests in the trust and make precise evaluation by the use of actuarial tables unreliable.

Even if we conclude that Ione's support rights could be accurately measured by applying actuarial factors to what she agreed to accept as the majority has done, I would conclude that the value of what the decedent transferred could not be readily ascertained. It was certainly less than the entire $26,307.38 placed in trust because his reserved rights and interests had some value, difficult as it might be to determine it. As the Supreme Court stressed in *United States* v. *Davis, supra* at 72, absent a readily ascertainable value it is accepted practice where property is exchanged in a negotiated arm's-length marital settlement to equate the values of the properties transferred. The majority recognizes the difficulty in trying to apply the "fractionalization theory" of *Estate of Donald M. Nelson,* 47 T.C. 279 (1966), remanded 396 F. 2d 519 (C.A. 2, 1968), in trying to evaluate the interests of the various trust beneficiaries. See footnote 8 of the majority opinion. In the light of all of the facts and circumstances, I would conclude and hold that the release of Ione's support rights in consideration for the transfer in trust was an arm's-length negotiated settlement in the divorce situation between adverse parties. There obviously was no great disparity between what was transferred and what was released and there is no evidence of any donative intent. The values of the two properties exchanged were equal in fact or should be presumed to be equal. *United States* v. *Davis, supra; Philadelphia Park Amusement Co.* v. *United States, supra.* As expressed another way, "a man who spends money or gives property of a fixed value for an unliquidated claim is getting his money's worth." *Commissioner* v. *Mesta,* 123 F. 2d 986 (C.A. 3, 1941). Under this view there was adequate and full consideration for the transfer and no portion of the trust should be included in decedent's estate. *Estate of Morrison T. O'Nan, supra; Edward B. McLean, supra.*

*Second,* even if I were to go along with the majority opinion to hold that there was less than an adequate and full consideration for the transfer, I would apply a different yardstick to measure the portion of the trust corpus to be included in decedent's estate. I would adopt and apply the rule announced in *Helvering* v. *United States Trust Co.*, 111 F. 2d 576 (C.A. 2, 1940), as urged by petitioner, and exclude from decedent's gross estate that proportion of the date-of-death value of the trust corpus which the value of Ione's support rights represented in the value of the trust corpus when it was established in 1936. While section 2043(a) does not prescribe a proportional rule, neither in my view does it prescribe the mechanical rule adopted. I would not adopt what has often been described as a harsh rule because I do not believe we are required to do so.

I have been unable to conceive of any situation in which the "harsh results" of the majority view can operate to the detriment of "the Treasury" as mentioned by the opinion, as a result of valuing consideration at the date of transfer in a support rights surrender case; it can only result in harsh treatment for the taxpayer in such cases.

In certain cases where property is transferred as consideration for a transfer in trust and such property decreases in value before the death of the transferor, an unfair or harsh result may follow insofar as the Commissioner is concerned by valuing the consideration at date of transfer. Only the decreased date-of-death value of *"the consideration"* would be included in decedent's estate whereas under the mechanical formula adopted by the majority opinion the estate would be allowed to deduct the higher date-of-transfer value of *"the consideration"* from the value of the transferred property taxed to the estate. However, this is not such a case and in every case where "support rights" acquired by the decedent are *"the consideration"* they will not be assets in the transferor's estate upon his death. A transfer in consideration of support rights is in essence the discharge of a legal obligation which reduces the transferor's estate. No property replaces the transferred property but the obligation is satisfied. Certainly, therefore, any decrease in value of the "support rights," *"the consideration,"* after the date of transfer does not work a harsh result on the Commissioner because no value for the consideration is includable in the decedent's estate anyway, any more so than in the case of the payment or discharge of any other debt.

In the instant case the majority has concluded that the decedent, by his transfer in trust, discharged his support obligation to Ione, which was valued at $17,150.35. He paid that debt, and by relinquishing her rights, Ione paid him that consideration for the transfer. To the extent that Ione paid for the transfer by discharging those rights there was adequate consideration and that portion of the trust corpus,

$17,150.35, was fully paid for by her. If two separate trusts had been created at that time in all respects identical with the one trust here involved and decedent had transferred $17,150.35 to one in consideration of Ione's support rights and $9,157.03 to the second without consideration, so that his total transfer was $26,307.38, the exact amount here involved, and after his death the two trusts had the identical assets of the instant trust with a date-of-death value of $93,411.25, divided between them, as in the instant case involving only a single trust, no portion whatever of the first trust would be taxed in his estate and the entire corpus of the second trust would be includable. I am not convinced that because only one trust is here involved a different result should follow as determined by the majority opinion. The same result, however, does follow if petitioner's proportional formula for valuing the includable portion of the trust is applied.

Ione bought and paid for $17,150.35 of the $26,307.38 worth of securities placed in trust. To that extent she gave consideration for it. There is no logic or reason to conclude that the accretion in the value of the portion of the trust she paid for should be added to decedent's estate. I would interpret the statutes, secs. 2036, 2038, and 2043(a) and the regulations, section 20.2043-1 to mean that the "property to the extent of any interest therein" and "the property otherwise to be included on account of such transaction," means the property that was transferred without consideration and not also property to the extent that it was bought and fully paid for. In cases in which the property cannot be readily divided so as to be able to ascertain which property or portion thereof falls into each category, I would conclude that "the value of *the consideration* received" means the proportion of the value of the property at death attributable to the consideration paid. *Helvering* v. *United States Trust Co., supra; United States* v. *Past*, 347 F. 2d 7, 15–18 (C.A. 9, 1965), dissenting opinion of Ely, *J.* The anomalous and harsh results which follow here from the simple subtraction of the value of the consideration at the date of transfer from the value of the entire trust corpus at date of death are avoided by such an interpretation of the statutory provisions. See Charles L. B. Lowndes, "Consideration and The Federal Estate and Gift Taxes," 35 Geo. Wash. L. Rev. 50, 57–58; note, "Inheritance and Estate Taxes," 70 Harv. L. Rev. 1486.

The same result follows from the application of what has been for many years respondent's own interpretation and application of the statutes. In E.T. 19, 1946–2 C.B. 166, the Commissioner ruled that to the extent that a transfer does not exceed the reasonable value of the support rights of the wife it is to be treated as made for *an adequate and full consideration in money and money's worth.* It is therefore clear that to the extent that the transfer here did not exceed $17,150.35

it was *not* for an inadequate or insufficient consideration but was for *a full and adequate consideration* in money or money's worth. E.T. 19 was still in effect when decedent died in 1963 and only recently has been superseded by Rev. Rul. 68–379, 1968–2 C.B. 414. (The extension of E.T. 19 by the "decretal obligation" rule of *Harris* v. *Commissioner*, 340 U.S. 106 (1950), to the estate tax area by Rev. Rul. 60–160, 1960–1 C.B. 374, is not here material.)

If this application and statutory interpretation followed by the Commissioner for many years is adopted here, then only $9,157.03 of the property transferred in trust was a transfer for insufficient consideration under section 2043(a) and there shall be included in the gross estate of decedent only the excess of the fair market value at the time of death of *that* property over the consideration received therefor. Since no consideration was paid for that property, its value at date of death would be included in toto. Exactly the same portion of decedent's estate would be taxable if this approach is adopted as would be includable if the proportional method is used and the entire transfer is regarded as one for partial consideration. I would adopt the proportional method urged as the proper one by petitioner, and include in decedent's estate only that portion of the trust corpus which represents the fully taxable portion of the transfer in trust for which no consideration passed. This would exclude from the estate only that proportion of the date-of-death value of the trust corpus which the value of Ione's support rights represented in the value of the trust corpus at time of transfer and is in accord with *Helvering* v. *United States Trust Co.*, *supra*, and the long standing interpretation of the Commissioner as stated in E.T. 19, *supra*. Only to the extent that an includable transfer exceeds adequate and full consideration should transferred property be taxed to the transferor's estate. The majority view in my opinion does violence to this interpretation by applying the mathematical formula adopted.